Commonwealth of Pennsylvania, Petitioner *v.* Joint Bargaining Committee of Pennsylvania Employment Security Employes Association and The Pennsylvania Social Services Union, both affiliated with the Services Employes International Union, AFL-CIO, Respondents.

Argued January 31, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DISALLE.

*Michael H. Small,* Assistant Attorney General, with him *Kurt H. Decker,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for petitioner.

*Stephen A. Sheller,* with him *Bruce M. Ludwig,* and *Sheller & Chaikin,* for respondent.

OPINION BY JUDGE MENCER, May 19, 1978:

This is a petition for review of an arbitration award ordering the reinstatement of David L. Clowes (Clowes) to his position as an employe of the Commonwealth of Pennsylvania, Bureau of Employment Security (Commonwealth). Since the arbitrator's award was based on a reasonable interpretation of an agreement between the Commonwealth and the Joint Bargaining Committee of Pennsylvania Employment Security Employes Association and the Pennsylvania Social Services Union (Union), we must deny the petition and affirm the award.

Between July 1, 1975 and July 21, 1975, certain of the various employes represented by the Union were

engaged in a strike in support of the Union's position in ongoing collective bargaining with the Commonwealth. On the evening of July 8, 1975, Clowes, a striking employe, gained entrance to an office of the Bureau of Employment Security by misrepresenting to the janitor that someone was planning to break into the office and steal the Bureau's files. Clowes then pretended to telephone the manager of the office and told the janitor that the manager wanted the files hidden. Clowes suggested that the janitor remove all the files and put them into a garbage bag on the floor, and the janitor complied with the suggestion. Clowes never touched the files personally.[1] The Union has asserted, without contradiction by the Commonwealth, that Clowes' motive was to cause problems for employes of the office who were not honoring the picket lines.

On August 6, 1975, Clowes was discharged by the Commonwealth for the July 8 incident. On August 14, 1975, the Commonwealth and the Union signed a collective bargaining agreement and a "Letter of Understanding." The Letter of Understanding contained the following "amnesty clause":

> There shall be no disciplinary action initiated by the Employer against employes in this bargaining unit for strike activities during the period of time between July 1, 1975 to July 21, 1975.
>
> *The amnesty does not apply to any employe who committed crimes or misdemeanors.* (Emphasis added.)

---

[1] There was some indication that Clowes also cut the telephone lines while he was in the office. Clowes and the Union denied this, however, and the arbitrator chose to accept the Union's version of the facts.

At or about the same time, a criminal complaint was brought against Clowes charging him with burglary. On November 6, 1975, pursuant to a plea bargain, the charge of burglary was dropped, and Clowes entered a plea of guilty to criminal mischief involving less than $500, *a summary offense. See* 18 Pa. C.S. §3304(b).

When the Commonwealth refused to reinstate Clowes, the Union filed a grievance, contending that the amnesty clause of the Letter of Understanding had been violated.[2] An arbitrator heard the grievance on October 8, 1976 and entered an award on March 14, 1977 ordering the reinstatement of Clowes with back pay. The Commonwealth's petition for review in this Court followed.

Our scope of review of this arbitration award is governed by Sections 10 and 11 of the Act of April 25, 1927, P.L. 381, No. 248, *as amended* (Arbitration Act), 5 P.S. §§170, 171. *See Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977). Where the arbitrator's task has been to interpret the agreement between the parties to a dispute, the Arbitration Act establishes a scope of review equivalent to the "essence test" utilized in the federal courts. *See County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 381 A.2d 849 (1977); *Community College of Beaver County, supra.* Thus, an arbitrator's interpretation of a labor agreement must be upheld if it can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. *Ludwig Honold Mfg.*

_____

[2] The Commonwealth and the Union agree that the propriety of Clowes' discharge is governed by the Letter of Understanding.

*Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969). If the arbitrator's interpretation of the agreement is reasonable, it must be affirmed even if a contrary interpretation appears more reasonable to the reviewing court. *See Community College of Beaver County, supra.* Thus, the only question before us is the reasonableness of the arbitrator's interpretation of the amnesty clause.

Before the arbitrator, the Commonwealth's major contention was that a summary offense was a "crime" within the meaning of the Crimes Code, 18 Pa. C.S. §106(a), and was therefore a "crime or misdemeanor" within the meaning of the amnesty clause. Whether or not a summary offense is indeed a "crime" within the meaning of the Crimes Code,[3] it does not follow that it is a "crime or misdemeanor" as that term is used in the Letter of Understanding. If the Commonwealth's position were adopted, the amnesty provision would not apply to an employe who committed relatively minor offenses such as scattering rubbish or posting an advertisement on the property of another. *See* 18 Pa. C.S. §§6501, 6503. It was not unreasonable for the arbitrator to conclude that the term "crimes and misdemeanors" was meant to refer to offenses more serious in nature. The arbitrator's conclusion that

---

[3] It is not clear whether or not a summary offense is a "crime" within the meaning of 18 Pa. C.S. §106. That section is entitled "Classes of Offenses." Subsection (a) provides that an offense for which a sentence of imprisonment is authorized constitutes a crime. A summary offense is punishable by a term of imprisonment not to exceed 90 days (18 Pa. C.S. §1105). However, subsection (a), in enumerating the "classes of crimes," enumerates only murder, felonies and misdemeanors. Summary offenses are defined separately in subsection (c). Arguably, then, 18 Pa. C.S. §106 creates two classes of offenses: (1) crimes, which are subclassified as murder, felonies and misdemeanors, and (2) summary offenses. *But see Interest of Golden,* 243 Pa. Superior Ct. 267, 365, A.2d 157 (1976).

Clowes' conduct was not sufficiently serious to justify his discharge is reinforced by statements made by a member of the Commonwealth's negotiating team to the effect that the amnesty clause was "intended to protect people . . . in specific acts related to the strike activity, such as destruction of Commonwealth property."

While a different interpretation of the clause may have been possible, we cannot hold that this arbitrator's interpretation was unreasonable in light of the above considerations.

ORDER

AND Now, this 19th day of May, 1978, the award of Samuel H. Jaffee, Arbitrator, under date of March 14, 1977, in the above-captioned case, is hereby affirmed.