Montour School District, Appellant *v.* Montour Education Association, Appellee.

Argued May 6, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG and WILLIAMS, JR. Judge MACPHAIL did not participate.

*Peter J. King, Tucker, Arensberg, Very & Ferguson,* for appellant.

*Ronald N. Watzman,* for appellee.

OPINION BY JUDGE MENCER, August 14, 1980:

Montour School District (appellant) appeals from an order of the Court of Common Pleas of Allegheny County affirming an arbitrator's decision which ordered appellant to pay its teachers for days missed as a result of the inclement weather and concomitant gas shortage during the winter of 1977. We affirm.

This problem stems from two strikes which occurred in the fall of 1976 after appellant and the appellee, Montour Education Association (association), the bargaining agent for appellant's teachers, were unable to agree upon a collective bargaining contract for the 1976-77 school year. The first strike began on September 7, 1976 and ended in agreement on September 10, 1976. Appellant subsequently decided that this agreement did not adequately represent its intentions and thereafter refused to comply with the provisions thereof, precipitating another strike which lasted from October 1 until November 12, 1976. This strike ended when the Court of Common Pleas of Allegheny County concluded that the September 10 agreement was a valid contract which should be honored by the parties and issued an injunction against further work stoppage.

Following the second strike, appellant adopted a revised school calendar, rescheduling all but five of the days lost because of the strike. Since these last five days could not be rescheduled without illegally extend-

ing the calendar beyond June 30,[1] the teachers agreed to a proportionate reduction in salary.

When the fuel shortage occurred in January and February of 1977, twelve more days of classes were missed. Again, these days could not legally be rescheduled. Consequently, appellant refused to pay the teachers' salaries for each of the twelve days. A grievance claiming entitlement to salaries for the twelve days was submitted to arbitration and decided in favor of the association. This award was upheld by the lower court; appeal to this court followed.

Appellant argues that this arbitration award cannot be enforced because it would require appellant to violate Section 1006 of the Public Employe Relations Act (Act), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.1006, which reads as follows: "No public employe shall be entitled to pay or compensation from the public employer for the period engaged in any strike." Since the days missed as a result of the gas shortage could have been rescheduled but for the strikes in 1976, appellant claims that the days missed should be considered a "period engaged in any strike." While we might find this argument persuasive in a different factual matrix, we believe that, in this case, both the contractual provisions of the agreement under consideration and the legislation passed in conjunction with the declaration of a state emergency in 1977 necessitate a conclusion that these days were missed on account of the weather rather than on account of the strike.

The relevant sections of the collective bargaining agreement provide:

Article VI, Section A.  *School Calendar*

The Board and Association may each appoint two (2) representatives to meet and dis-

---

[1] *See* Section 401 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §4-401.

cuss for the purpose of formulating a school calendar for the ensuing school year.

Section B. *Basic Work Year*

The basic work year for professional employes shall not exceed 186 employe days for the basic salary set forth in Appendix A of this Agreement. It is understood and agreed that the school calender is subject to change in the event of school emergencies.

. . . .

Article VIII, Section G. *Safe Working Conditions*

Teachers shall not be required to work under unsafe or hazardous conditions or to perform tasks which endanger their health or safety. Unsafe conditions are understood to include lack of electricity, water, or inappropriate working temperatures. Teacher attendance shall not be required whenever student attendance is not required due to inclement weather or unsafe working conditions. All such days are subject to being made up at the discretion of the Superintendent.

The arbitrator considered the joint effect of these provisions and concluded that the teachers were contractually entitled to a specific annual salary which could not be reduced for days missed if the teachers were available for work or properly excused therefrom. He found that, here, the teachers were both available for work during the fuel crisis and properly excused therefrom and thus were entitled to payment for the twelve emergency days. Since the bargaining agreement provides for a maximum number of work days at a guaranteed salary with no reciprocal provision for a minimum number of work days, we believe that the rationale of *Carmichaels Area School District*

*v. Carmichaels Area Education Association,* 37 Pa. Commonwealth Ct. 141, 389 A.2d 1203 (1978), applies and the arbitrator's award is proper.

Appellant correctly points out that *Carmichaels* differs from the present case in that the agreement there was signed following the strike and thus took into consideration the poststrike calendar in setting salaries, while the agreement here was signed prior to the second strike and thus could not possibly have contemplated or made allowances for the strike. Nonetheless, the agreement here *did* contemplate the possibility of emergency school closings. The arbitrator concluded that this provision was a bargained-for right to miss school in an emergency situation without suffering a reduction in pay. Thus, as in *Carmichaels,* "[n]either the grievance nor the arbitrator's eventual award was concerned with pay for the period during which the Association was on strike . . . , but rather with the District's failure to abide by its contractual obligation to pay specified salaries for the . . . school year. . . ." *Id.* at 149, 389 A.2d at 1207. We believe that this interpretation by the arbitrator is rationally derived from the agreement and we must therefore respect the arbitrator's award. *Community College of Beaver County v. Society of the Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977).

Finally, we note that the legislature specifically provided for problems arising as a result of the emergency conditions in 1977. Section 1501.1 of the Code, added by Section 1 of the Act of June 1, 1977, P.L. 4, *formerly* 24 P.S. §15-1501.1, expiring June 30, 1977, provided: "No employe of any school closed by reason of the Weather Emergency of 1977 shall receive more or less compensation than that to which the employe would otherwise have been entitled from the school district. . . ." Here, were it not for the weather emer-

gency,[2] the teachers would have been entitled to the adjusted salary agreed upon following the second strike. Under the mandate of Section 1501.1, appellant cannot pay its teachers less than that to which they would otherwise have been entitled.

Order affirmed.

### ORDER

Now, this 14th day of August, 1980, the order of the Court of Common Pleas of Allegheny County, dated March 15, 1979, denying the application of the Montour School District for review and also its petition to vacate or modify an arbitrator's award and affirming said arbitration award, is hereby affirmed.

---

[2] Although appellant would have us limit "weather emergency" to the three days during which all schools were ordered closed by the Governor, neither the Governor's proclamation of a state of emergency nor Section 1501.1 of the Code limited the weather emergency to three days.