In the Matter of Arbitration Between: McKeesport Area School District, Appellant v. McKeesport Area Education Association, Appellee.

Argued November 18, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, WILLIAMS, JR. and PALLADINO. Judges MENCER and MACPHAIL did not participate.

*John M. Tighe, Tarasi & Tighe*, for appellant.

*Ronald N. Watzman, Watzman & Elovitz*, for appellee.

OPINION BY JUDGE PALLADINO, January 21, 1981:

The McKeesport Area School District (District) appeals from an order of the Court of Common Pleas of Allegheny County affirming an arbitrator's award on behalf of the McKeesport Area Education Association (Association). We affirm.

As a result of a failure to enter into a new collective bargaining agreement for the 1976-77 school year, the Association, which acts as collective bargaining agent for the District's teachers called for a general strike to commence on January 3, 1977 at the close of

the Christmas vacation.[1] The strike took place as scheduled and lasted through January 30, 1977, a period of 19 school days. A new collective bargaining agreement was ratified by both parties on January 30, 1977 and the teachers were to resume work on January 31, 1977. Unfortunately, inclement weather coupled with the severe energy shortage of 1977 prevented the teachers from returning to work from January 31, 1977 through February 4, 1977 because the District's schools were closed as a result of the weather emergency.

Classes resumed on February 7, 1977 and continued normally throughout the remainder of the school year with the District rescheduling as many of the missed days as possible without violating Section 401 of the Public School Code of 1949[2] by extending classes beyond June 30. Consequently, a total of 164 class days and one teacher in-service day were held in 1976-77. Reasoning that the new collective bargaining agreement called for 185 days, the District deducted 20 days of pay from the teachers' salaries. A grievance protesting the District's failure to pay the teachers for days lost because of the energy crisis was submitted to arbitration and decided in favor of the Association. This award was affirmed by the lower court, and the instant appeal followed.

The arbitrator found (1) that the appropriate base figure for calculating the deduction was 181 days rather than the 185 used by the District; (2) that the extra four days between 181 and 185 were intended by the District to be utilized as teacher in-service days;

---

[1] This was the second work stoppage which occurred during the 1976-77 school year. The first work stoppage occurred for 12 days in September, 1976 and was subsequently held by this Court to be a lockout. *McKeesport Area School District v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 334, 397 A.2d 458 (1979).

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §4-401.

(3) that the scheduling of in-service days was optional with the District and therefore the teachers should be paid for the three in-service days which, though not actually held, could have been scheduled by the District on weekends; and (4) that the teachers were entitled because of the Weather Eemergency Act of 1977[3] to be paid for the five days during the week of January 31 to February 4, 1977 when the schools were closed because of the energy crisis. The arbitrator's findings, in effect, awarded the teachers eight days' pay, thereby reducing the District's original pay deduction from 20 to 12 days.

On appeal to this Court the District concedes that the five days awarded because of the Weather Emergency Act of 1977 is proper. Thus the only issue left for our consideration is the propriety of the award of pay for three in-service days which were never scheduled.

The District argues first that the in-service days were not at issue before the arbitrator and that by deciding this issue the arbitrator violated Section 11(b)

---

[3] Section 1 of the Act of June 1, 1977, P.L. 4, *formerly* 24 P.S. §15-1501.1, expiring June 30, 1977, provided:

No employe of any school closed by reason of the Weather Emergency of 1977 shall receive more or less compensation than that to which the employe would otherwise have been entitled to from the School District, Intermediate Unit or Vocational-Technical School had the Weather Emergency of 1977 not occurred.

The Weather Emergency Act, which amended Section 1501 of the Public School Code of 1949 for the 1976-77 school year, was incorporated into the collective bargaining agreement by virtue of the agreement's Statutory Savings Clause which provided as follows:

ARTICLE III A—STATUTORY SAVINGS CLAUSE

Nothing contained herein shall be construed to deny or restrict to any professional employee such rights as he may have under the Public School Code of 1949, as amended, or the Public Employee Relations Act, Act 195, or other applicable laws and regulations.

of the Act of April 25, 1927, P.L. 381, *as amended,* 5 P.S. §171(b) (Arbitration Act of 1927) which requires judicial modification of an award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted." The District further argues that even if the arbitrator had jurisdiction to decide the in-service days issue, the subsequent award based on a stated number of in-service days did not have a rational basis in the collective bargaining agreement.

This Court's scope of review of an arbitrator's award under Section 11 of the Arbitration Act of 1927 is limited to a determination of whether the award is rationally derived from the collective bargaining agreement. *Trinity Area School District v. Trinity Area Education Association,* 49 Pa. Commonwealth Ct. 379, 412 A.2d 167 (1980). In making this determination it is incumbent upon the Court to refrain from interfering with the arbitrator's interpretation and resolution of the factual issues and to confine its review to whether the award "draws its essence from the collective bargaining agreement." *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 586, 375 A.2d 1267, 1272 (1977) (quoting *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597 (1960)). It is thus well settled that "an arbitrator's interpretation of a labor agreement must be upheld if it can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Commonwealth v. Joint Bargaining Committee of Pennsylvania Employment Security Employes Association,* 35 Pa. Commonwealth Ct. 347, 350, 386 A.2d 1050, 1052 (1978) (*quoting Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d

Cir. 1969)). Thus, it must be decided whether the arbitrator acted reasonably in considering the in-service days issue and if so, whether his award was reasonably derived from the collective bargaining agreement.

The Association argues, and we agree, that the in-service days were properly in issue because the arbitrator was in effect deciding whether the District violated the collective bargaining agreement by docking the teachers 20 days of pay. In so doing the arbitrator had to consider all potential working days a teacher could be required to complete. In-service days are routinely a part of the teachers' school year and the arbitrator did not exceed his jurisdiction in considering whether any teacher in-service days were included among the 20 days docked by the District. In order to decide how many days the teachers were entitled to because of the Weather Emergency Act of 1977, the arbitrator had to determine exactly how the District arrived at its 20 day deduction figure. Strike days, inclement weather days, and in-service days may all have been included in the District's calculation. The fact that the Association did not specifically mention in-service days in its grievance letter should not restrict the arbitrator in his resolution of the problem. An arbitrator must be given a certain amount of flexibility to reach an amicable solution and should not be limited in his problem solving to the exact language of the grievance.

The District also maintains that the arbitrator's award of three in-service days was not rationally derived from the collective bargaining agreement. The pertinent clause of the agreement considered by the arbitrator in reaching his award reads as follows:

### ARTICLE V B—TEACHER WORK YEAR

The basic work year for teachers shall be established by the employer and shall not exceed 185

days excepting, however, counselors, home and school visitors, and psychologists who will work their schedule as specified in Article XI(b). There shall be 181 student days; the remaining four days shall be utilized for in-service and/or clerical days. (The last sentence shall not apply to the 1976-77 year.)

The District interpreted Article V B as requiring a minimum of 185 days' work. Thus, it deducted the 165 days worked by the teachers from 185 and arrived at 20 days' docking. The arbitrator interpreted the "shall not exceed" language of Article V B as establishing only a maximum number of work days that the District had the right to schedule during the school year. Since Article V B contains no minimum number of days the teachers must work to earn their annual salaries, the arbitrator concluded that the District erred in using 185 as the base figure for the deduction. While the arbitrator found that the District could not have scheduled more than 164 class days because of the June 30 restriction, he determined that the District could have scheduled an additional three in-service days on Saturdays bringing the total teacher work days to 168. The arbitrator further concluded that the scheduling of in-service days was optional with the District and that the teachers' annual salary could not be further reduced for days missed which the District unilaterally failed to schedule. We believe the arbitrator's rationale is supported by *Montour School District v. Montour Education Association*, 53 Pa. Commonwealth Ct. 463, 417 A.2d 1331 (1980) and *Carmichaels Area School District v. Carmichaels Area Education Association*, 37 Pa. Commonwealth Ct. 141, 389 A.2d 1203 (1978), *aff'd*, 487 Pa. 15, 407 A.2d 382 (1979). In those cases we affirmed arbitrators' awards which found that teachers' salaries "could not be reduced for days missed if the teachers were avail-

able for work or properly excused therefrom'' where the bargaining agreements at issue provided only "for a maximum number of work days at a guaranteed salary with no reciprocal provision for a minimum number of work days." *Montour Area School District, supra* at 466, 417 A.2d at 1333.

Finally, we note that the arbitrator's decision to use 181 days as a base figure upon which to calculate the deduction was rationally derived from the agreement since the 185 day figure used by the District did not in the arbitrator's interpretation of the agreement represent the minimum number of days teachers would have to work to earn their annual salary.[4]

While other reasonable interpretations may have been made, our standard of review dictates that we decide only if the arbitrator's interpretation is reasonable, not whether there appears to be a more reasonable interpretation elsewhere. *See Community College of Beaver County, supra.* In light of the above considerations we agree with the lower court that the arbitrator's resolution is a reasonable interpretation of the collective bargaining agreement.

Accordingly, we will enter the following

ORDER

AND Now, January 21, 1981, the order of the Court of Common Pleas of Allegheny County, dated November 26, 1979 and docketed at Civil Division No. G.D. 78-9009, is hereby affirmed.

---

[4] The arbitrator's calculation can best be summarized as follows: 181 required class days minus 164 class days actually held leaves a total of 17 class days not scheduled. Of the 17, five were attributed to the weather emergency and 12 to the teachers' strike. Thus, the teachers are entitled to eight additional days of pay for the 1976-77 school year. Since 181 was found to be the appropriate base figure and one in-service day was actually held during the school year, the calculation gives the teachers credit for three in-service days not scheduled by the District.