Commissioners of Schuylkill County, Appellants v. American Federation of State, County and Municipal Employees, AFL-CIO, Council 13 and District Council 89, Appellees.

450

Argued April 6, 1981, before Judges ROGERS, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*Alvin B. Marshall, Lipkin, Stutzman, Marshall & Bohorad, P.C.,* for appellants.

*Theodore M. Lieverman, Kirschner, Walters & Willig,* for appellees.

OPINION BY JUDGE PALLADINO, August 27, 1981:

Appellants (Schuylkill "County Commissioners") appeal an order of the Court of Common Pleas of

Schuylkill County which dismissed Appellants' petition to vacate, modify or correct an arbitrator's award in favor of Appellees ("Union" representing county employees working at "Rest Haven" County Home and Hospital). We affirm.

In accordance with the Public Employe Relations Act (PERA),[1] the County Commissioners and the Union negotiated a collective bargaining agreement (Agreement) effective from January 19, 1977, until December 31, 1979. Like the parties' prior collective bargaining contract, the Agreement did not include a plan for remunerating new employees during and after their probationary period.

In January of 1978, during the term of the Agreement, the County Commissioners unilaterally created a salary schedule to cover all Rest Haven employees hired on or after January 19, 1978. The Union subsequently filed a grievance pursuant to the Agreement. Unable to resolve their dispute, the parties submitted the problem to binding arbitration as the Agreement provided.

The arbitrator found that the unilateral promulgation of a salary schedule not only violated the nature and intent of the collective bargaining process but also contradicted the parties' actual practices which were incorporated into the Agreement. Consequently, the County Commissioners filed a petition to vacate, modify or correct the arbitrator's award. The court of common pleas examined the arbitrator's award and determined that the award drew its essence from the parties' Agreement. Therefore, the court dismissed the County Commissioners' petition.

---

[1] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§1101.101-1101.2301, repealed in part by Section 2(d) of the State Employees' Retirement Code, Act of March 1, 1974, P.L. 125. The repealer concerns pension rights not at issue here.

In arbitration cases our Court's[2] scope of review is delineated by Sections 10 and 11 of the Act of April 25, 1927 (Arbitration Act), P.L. 381, *as amended*, 5 P.S. §§170, 171,[3] construed in pari materia[4] with PERA.[5] Both the Supreme Court of Pennsylvania and the Commonwealth Court have recognized that the provisions of the Arbitration Act are compatible with the "essence test" expounded by the Supreme Court of the United States in *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960).[6] "In Community College of Beaver County . . . the Supreme Court [of Pennsylvania] held that Section 11(d) [of the Arbitration Act] requires a reviewing

---

. [2] Our Court has jurisdiction to hear this case pursuant to Section 762(a)(4)(ii) of the Judicial Code, *as amended*, 42 Pa. C. S. §762(a)(4)(ii).

[3] Sections 10 and 11 of the Arbitration Act were repealed by Section 501(c) of the Act of October 5, 1980, P.L. 693. Similar provisions are now found in Sections 7314 and 7315 of the Uniform Arbitration Act, 42 Pa. C. S. §§7314, 7315.

[4] *Hazleton Area School District v. Hazleton Area Education Association*, 47 Pa. Commonwealth Ct. 255, 408 A.2d 544 (1979); *Community College of Beaver County v. Community College of Beaver County Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977).

[5] Section 903 of PERA, 43 P.S. §1101.903, states in pertinent part: "Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory."

[6] *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981); *Port Authority of Allegheny County v. Amalgamated Transit Union*, 492 Pa. 494, 424 A.2d 1299 (1981); *Community College of Beaver County; McKeesport Area School District v. McKeesport Area Education Association*, 56 Pa. Commonwealth Ct. 224, 424 A.2d 979 (1981); *Hazleton Area School District; Commonwealth v. Joint Bargaining Committee of Pennsylvania Employment Security Employes Association*, 35 Pa. Commonwealth Ct. 347, 386 A.2d 1050 (1978); *Barroner v. Blair County Board of Assistance, Department of Public Welfare*, 35 Pa. Commonwealth Ct. 379, 386 A.2d 171 (1978).

court to sustain an arbitration award under the PERA so long as it draws its essence from the collective bargaining agreement.'' *Hazleton Area School District,* 47 Pa. Commonwealth Ct. at 259, 408 A.2d at 546.

> To state the matter more precisely, where a task of an arbitrator, . . . has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. . . .'

*Leechburg Area School District,* 492 Pa. at 520, 424 A.2d at 1312 (quoting *Community College of Beaver County,* 473 Pa. at 593-94, 375 A.2d at 1275 (quoting *Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969))).

Therefore, the sole issue before our Court is whether the arbitrator's award based upon the parties' past wage practices, is rationally derived from the parties' Agreement. ''Where it is determined that the subject matter of the dispute is encompassed within the terms of the [collective bargaining] agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court.'' *Leechburg Area School District,* 492 Pa. at 521, 424 A.2d at 1312-13.

As summarized by the arbitrator, the dispute in the instant case concerned the County Commissioners' ''right to implement a classification wage schedule and to limit employees hired under that schedule to the rate specified for their positions without move-

ment to the prevailing rate upon completion of the probationary period.''

To resolve the controversy, the arbitrator examined the Agreement's wage clause[7] and found it inherently ambiguous because it failed to define the ''annual wage rate,'' *i.e.,* the amount of the starting wage. ''Our Supreme Court [of Pennsylvania] has held that evidence of past practice can be used in arbitrations to implement contract language which sets forth only a general rule and to clarify ambiguous language.'' *School District of Pittsburgh v. Local Union 297, Pittsburgh Area School Employees,* 46 Pa. Commonwealth Ct. 192, 195, 407 A.2d 67, 68 (1979). Therefore, the arbitrator reviewed the ''past practices of the parties to determine their probable intent.'' *Shippensburg Area Education Association v. Shippensburg Area School District,* 42 Pa. Commonwealth Ct. 128, 134, 400 A.2d 1331, 1333 (1979).

By studying the parties' conduct during their prior collective bargaining contract and the first year of the present Agreement, the arbitrator discovered that new employees who successfully completed their probationary period, were advanced to the prevailing wage rate received by regular employees.[8] ''[W]e have a contract-spanning practice which continued unabated during the first full year of the new agreement. The practice itself was consistent and uniform. . . . [The practice] can be said to have been

---

[7] In pertinent part the wage provision declares that ''[r]egular employees covered by this Agreement . . . shall receive increases in the annual wage rate as follows:

Effective January 19, 1977   $.30 per hour actually worked

January 19, 1978   $.25 per hour actually worked

January 19, 1979   $.25 [p]er hour actually worked

[8] In addition, the grievance of a worker who was a probationary employee when the wage schedule was promulgated, was settled by an agreement to advance the employee to the prevailing rate upon completion of the probationary period.

incorporated in the agreement by action of the parties.'' Thus, to effectuate the Agreement's wage clause, the arbitrator concluded that the parties intended the ''annual wage rate'' (the starting wage) for probationary employees to be the prevailing wage rate earned by regular employees.[9]

On appeal the County Commissioners allege that the arbitrator's reliance on the parties' past practices contravened the clear dictates of the Agreement's integration clause[10] and thereby invalidated the arbitrator's award.

[T]he existence in a contract of a broad integration clause, if it means anything, does clearly negate the notion that the parties meant to include any terms or conditions, including those based *only* on past practices, not specifically incorporated in the written contract or reasonably inferable from its provisions.

. . . [W]here a collective bargaining agreement . . . does include a broad integration clause, an award which incorporates into the agreement, as separately enforceable conditions of the employment relationship, past practices which antedate the effective date of that agreement cannot be said to 'draw its essence from the collective bargaining' agreement.

---

[9] Since the parties' past practices revealed that the County Commissioners unilaterally determined the wages of new employees during the probationary period, the arbitrator's award recognized the County Commissioners' right to maintain unilateral control of probationary employees' wages under the Agreement.

[10] In pertinent part the integration clause states that "[t]he Employer and the Union acknowledge that this Agreement constitutes the entire agreement between the parties for the duration of the life of this Agreement and that this Agreement supersedes all prior agreements and undertakings, . . . or practices . . . between the Employer and the employees. . . ."

*Ringgold Area School District v. Ringgold Education Association, PSEA/NEA,* 489 Pa. 380, 385, 414 A.2d 118, 121 (1980) (emphasis deleted) (quoting *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 37-38, 381 A.2d 849, 854 (1978)), *rev'g Arbitration of Ringgold Schools,* 24 Pa. Commonwealth Ct. 266, 356 A.2d 842 (1976).

In the instant case, however, the arbitrator's award did not add to the Agreement, as a separately enforceable condition, a provision based solely upon the parties' former wage practices. The arbitrator's award merely explained an extant written, but undefined, term of the Agreement, *i.e.,* the "annual wage rate." Moreover, the award did not incorporate into the Agreement conduct predating the commencement of the Agreement, but rather, conduct which continued through the first operative year of the Agreement. Therefore, the arbitrator's award drew its essence from the parties' collective bargaining Agreement and did not violate the Agreement's integration clause.[11]

Accordingly, we will enter the following

### ORDER

AND Now, August 27, 1981, the order of the Court of Common Pleas of Schuylkill County, dated January 14, 1980, Docket Number S-828, 1979, dismissing the petition of the Commissioners of Schuylkill County to vacate, modify, or correct the arbitrator's award, is hereby affirmed.

---

[11] Pursuant to Pa. R.A.P. 2744, the Union requests that damages be assessed against the County Commissioners. However, given the ambiguity contained in one of the Agreement's key provisions and the difficulty of resolving that ambiguity without violating the Agreement's integration clause, we cannot say that the County Commissioners' appeal was frivolous. Therefore, we do not award damages in this instance.