**NARCOTICS AGENTS REGIONAL COMMITTEE, Fraternal Order of Police Lodge No. 74, Petitioner**

v.

**OFFICE OF ATTORNEY GENERAL, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 4, 2007.

Decided Nov. 15, 2007.

Sean T. Welby, Harrisburg, for petitioner.

Ryan J. Cassidy, Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, FRIEDMAN, Judge, KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

The Narcotics Agents Regional Committee, Fraternal Order of Police Lodge 74 (Union) petitions this Court to vacate an arbitration award, which denied the Union's grievance and entered an award that the Office of Attorney General (OAG) had just cause to terminate its employee, Narcotics Agent James J. Kolojejchick (Grievant). We affirm.

The facts of this case are as follows. The Union and the OAG are parties to a collective bargaining agreement effective July 1, 2003 through June 30, 2007, providing for the arbitration of grievances with respect to just cause for discipline imposed. Grievant, a member of the Union for 15 years, was employed by the OAG as a Narcotics Agent II.

Grievant was the lead investigator in an OAG investigation into corruption among prison guards at the Lackawanna County Prison. As a result of the investigation, the OAG convened a grand jury to review the evidence before issuing indictments. Thereafter, the prison warden, deputy warden, prison guard lieutenant and sergeant were arrested and charged with felonies.

All OAG members, including Grievant, who had contact with the grand jury, signed the following oath:

I, _____, do solemnly swear that I will keep secret all that transpires in the jury room, all matters occurring before the grand jury, and all matters and information concerning this grand jury obtained in the course of my official duties or otherwise, except when authorized by law or permitted by the Court.

Reproduced Record (R.R.) at 81. Grievant was not present when the individuals testified before the grand jury, but he was privy to the impressions of the prosecutors working on the case who observed the witnesses.

In January 2004, sister newspapers, the *Scranton Times* and *Scranton Tribune,* published nearly identical front-page stories alleging that two Lackawanna County Commissioners had testified before the grand jury in a "vague" and "evasive" manner, quoting an unidentified source. An investigation into the leak then ensued by a special prosecutor appointed by the judge overseeing the grand jury. The initial source of the leak has never been identified; Grievant is not believed to have been this leak.

The County Commissioners named in the article then sued the papers for defamation. The newspaper editor needed a second source to confirm the story published in January 2004 in order to mitigate the newspapers' exposure in the lawsuit.[1] The newspaper editor met with Grievant in December 2004. Grievant told the editor that he had heard from the OAG attorney conducting the grand jury investigation that the Commissioners had testified in an evasive manner. In response to a further

plea from the editor, Grievant put this information in the form of an affidavit.

In June 2005, Grievant and others were interviewed by OAG's Internal Affairs (IA) regarding the source of the information that appeared in the January 2004 newspaper article. In answer to the questions about whether Grievant had revealed any information to the newspaper, Grievant answered that he had not.

A week after the IA interview, Grievant was deposed by the attorney representing the County Commissioners in the defamation lawsuit against the newspaper. When asked whether he had provided any information at any time to the newspaper, Grievant testified regarding the exchange with the newspaper editor in December 2004.

After being deposed in the defamation suit, IA interviewed Grievant a second time. At that point, Grievant told investigators about the December 2004 exchange with the newspaper editor and the signed affidavit. Grievant's admission led to a criminal proceeding for contempt of court. Grievant was ultimately adjudicated in contempt of court and sentenced to jail time and a fine.

Upon review of the matter by the OAG, Grievant was terminated effective September 2, 2005. The Union filed a grievance challenging the termination and the matter went to arbitration. Hearings before the appointed arbitrator were held on May 25 and July 28, 2006, after which both parties submitted post-hearing briefs. The arbitrator concluded that Grievant had violated his Secrecy Oath in his disclosures to the newspaper and that he knew such conduct was prohibited by both his oath and the OAG's policies. The arbitrator further de-

---

[1] The newspaper had violated its own two-source rule in printing the January 2004 story with only one source.

termined that Grievant deliberately deceived the OAG when it questioned him regarding disclosures to the newspaper. The arbitrator found that Grievant's explanation that he misunderstood what the IA investigators were asking was simply not credible. In light of Grievant's numerous prior instances of service with grand juries, the arbitrator rejected as incredible the notion that Grievant did not believe his disclosures were wrong or impermissible. Based upon the seriousness of the misconduct, its corresponding impact on the OAG and its law enforcement mission, the arbitrator concluded that the OAG had just cause to terminate Grievant's employment.

From this decision, the Union filed a petition for review with this Court. The Union presents the issue of whether the arbitrator went beyond the essence of the collective bargaining agreement, and thus exceeded his jurisdiction, by ruling that the Grievant had been untruthful to IA investigators, without substantial evidence in the record to support his decision.

▆▆▆ To begin, our scope of review of an arbitrator's decision is limited and the decision will not be overturned if it draws its essence from the collective bargaining agreement. *Cheyney University*, 560 Pa. 135, 743 A.2d 405 (1999); *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981); *Philadelphia Housing Authority v. American Federation of State, County, and Municipal Employees, District Council 33, Local 934*, 900 A.2d 1043 (Pa.Cmwlth.2006). Pursuant to the essence test, a reviewing court will conduct a two-prong analysis. *Cheyney University*. First, the Court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. *Id.* Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's

interpretation can rationally be derived from the collective bargaining agreement. *Id.* That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement. *Id.* In order to determine whether an arbitrator's award draws its essence from the terms of the collective bargaining agreement, the award must be examined in light of the language of the collective bargaining agreement, its context, and any other indicia of the parties' intention. *McKeesport Area School District v. McKeesport Area Education Association*, 56 Pa.Cmwlth. 224, 424 A.2d 979 (1981).

While the Union does not dispute that Grievant violated the Secrecy Oath, the Union argues that the arbitrator's finding that the Grievant had been untruthful to IA investigators is not supported by substantial evidence. In absence of a compound violation, mitigation of the punishment imposed is warranted. We disagree.

▆▆▆ Arguing that the first IA interview only involved the leak which led to the January 2004 story, the Union maintains that Grievant truthfully told IA investigators that he had not revealed anything to the newspapers that appeared in the January 2004 story. Grievant testified that he did not understand the time period to which the questions were addressed and believed the questions only pertained to the initial leak. The arbitrator, however, did not find Grievant's testimony convincing or credible. During the IA interview, the following exchange occurred:

Q: Did you reveal *any information from the 20th Statewide Investigating Grand Jury* to Jennifer Henn, a reporter for the Scranton Times/Tribune?

A: No.

**552**

Q: Concerning the alleged leak of Grand Jury testimony from the 20th Statewide Investigating Grand Jury, did you reveal *any information to anyone outside of the law enforcement community?*

A: No.

R.R. at 252a (emphasis added). The arbitrator found that the second question did not refer to any particular person and "cannot honestly be interpreted as applying only to the time of the January 12, 2004 article." Arbitrator's Decision at 19. The arbitrator found that the IA investigator credibly testified that the questions were not limited to a particular time period. Such credibility determinations are within the sole province of the arbitrator and are beyond the scope of our review. *City of Pittsburgh v. Kisner*, 746 A.2d 661 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 564 Pa. 715, 764 A.2d 1072 (2000).

We, therefore, conclude that the arbitrator's finding that Grievant lied to IA investigators is amply supported by the record. After careful examination of the arbitrator's award, we cannot conclude that the arbitrator so exceeded the essence of the collective bargaining agreement in determining that the OAG had just cause for termination to warrant reversal in this matter.

Accordingly, the order of the arbitrator is affirmed.

**ORDER**

AND NOW, this 15th day of November, 2007, the award of the arbitrator, dated January 31, 2007, is AFFIRMED.