# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wilkins Township,                          :
                    Appellant              :
                                           :
          v.                               :    No. 1219 C.D. 2016
                                           :    Argued:  April 4, 2017
The Wage Policy Committee of the           :
Wilkins Township Police Department         :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge


OPINION BY JUDGE BROBSON                        FILED:  May 18, 2017


Appellant Township of Wilkins (Township) appeals from an order of the Court of Common Pleas of Allegheny County (trial court).  The trial court confirmed a supplemental grievance arbitration award awarding damages in the form of lost wages to Wilkins Township Police Officer Jon Sherman (Sherman). Sherman is represented by the Wage Policy Committee of the Wilkins Police Department (WPC) for collective bargaining purposes.  For the reasons that follow, we affirm the order of the trial court.

On August 8, 2012, Sherman submitted to the Wilkins Township Police Department a form entitled "Off Duty Employment," setting forth notice that Sherman was contemplating off-duty employment at Brewstone's, a bar and restaurant.  According to the information Sherman provided on the form, the position at Brewstone's involved checking identification on Thursdays, Fridays, and Saturdays from 12:00 a.m. through 2:00 a.m.  Initially, the Chief of Police advised Sherman that no police officer could accept employment at Brewstone's unless the Board of Commissioners (Board) approved the employment.   On

August 21, 2012, the Board advised Sherman that the employment at Brewstone's was prohibited based upon its conclusion that checking identifications and providing security at a bar constituted a conflict of interest with Sherman's duties as a police officer. On September 24, 2012, Sherman filed a grievance to proceed to arbitration pursuant to the collective bargaining agreement between the Township and the WPC (CBA) and in accordance with the law commonly known as Act 111 (Act 111).[1] The primary focus of Sherman's grievance arbitration[2] request was to challenge the Board's conclusion that the proposed off-duty employment constituted a conflict of interest.[3]

---

[1] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-.10.

[2] Our Supreme Court has described grievance arbitration as concerned with the resolution of disputes regarding the interpretation of an existing collective bargaining agreement. *Town of McCandless v. McCandless Police Officers Ass'n*, 901 A.2d 991, 995 (Pa. 2006).

[3] Article XX(F) of the CBA provides:

> Self-Employment: Full-time officers may engage in outside or self-employment activities; however, the employment with the Township is deemed the primary employment. Police officers may be required to notify the Chief of Police of the names of their outside employers and the type of work they do, as well as their schedule for outside employment. The Township may require the officer to refrain from excessive levels of outside work which would tend to render the officer unfit for duty and to refrain from outside employment which would tend to bring disrepute on the office or would constitute a conflict of interest.

(R.R. at 39a.) Additionally, the Wilkins Township Police Department Manual of Rules and Regulations provides:

> If an off duty employment situation held by a member is found to interfere with (1) The Department's image or efficiency, (2) The on duty business or work performance of the individual in question, or (3) Is found to be inconsistent or in conflict with the member's duties as a police officer, the member may be required to terminate such employment.
>
> . . . .

**(Footnote continued on next page…)**

2

On May 20, 2013, the appointed Arbitrator conducted a hearing. According to the Arbitrator's opinion and award, the parties "exchanged" briefs on June 17, 2013. (Reproduced Record (R.R.) at 50a.) In his opinion and award, the Arbitrator noted that the issue in the grievance, as agreed upon by WPC and the Township, was "whether the Township violated the [CBA] when it refused to allow [Sherman] to engage in outside employment at Brewstone's." (R.R. at 52a.)

Sherman asserted that the proposed off-duty employment would not create a conflict of interest in light of the fact that the position does not call upon Sherman to act in the capacity of a police officer but, rather, only requires him to evaluate potentially fake identifications and to call on-duty police for assistance. The Township asserted that a police officer's employment in a bar or tavern creates a conflict of interest. The Arbitrator upheld Sherman's grievance and also ordered the Township to "make [Sherman] whole for the net ('take home') earnings he lost as a result of its forbidding him from [working at Brewstone's.]" (R.R. at 54a.) The Township filed a petition to vacate the award with the trial court, challenging the Arbitrator's award of lost earnings on two grounds: (1) lack of jurisdiction of the Arbitrator to award lost wages when Sherman did not raise the issue of lost wages before or during the hearing but, instead, raised the issue in his post-hearing brief to the Arbitrator; and (2) violation of due process where Sherman did not

_____

**(continued…)**

> The primary obligation and responsibility of a member who engages in off duty employment must be to the Department. Members directed to report for overtime work will do so regardless of their off duty employment situation.

(R.R. at 51a.)

3

raise the issue of lost wages in the grievance notice or during the Arbitrator's hearing.

The trial court affirmed the Arbitrator's award, concluding that the award does not provide for a specific amount of lost wages but rather lays the framework for a "back pay hearing."[4] The Township appealed the trial court's decision to this Court, arguing the following issues: (1) whether the inclusion in the award of an as-yet undetermined amount of lost wages violates the Township's procedural due process rights; and (2) whether the Arbitrator lacked jurisdiction to consider the lost-wages issue based upon the allegation that Sherman failed to raise the issue in a timely manner.

On appeal, we held that the Arbitrator did not exceed his jurisdiction by awarding lost wages. *Township of Wilkins v. The Wage Policy Comm'n of the Wilkins Twp. Police Dep't (Jon Sherman, Grievant)*, (Pa. Cmwlth., No. 833 C.D. 2014, filed May 15, 2015) (*Sherman I*). Citing *Bensalem Township v. Bensalem Township Police Benevolent Association, Inc.*, 803 A.2d 239 (Pa. Cmwlth. 2002), for the proposition that "the jurisdiction of an arbitrator goes to his or her power to decide an issue in dispute rather than to his or her fashioning of an award," we reasoned that the Township contested the form of relief granted by the

---

[4] Throughout their pleadings, motions, and briefs, the parties refer to the damages that the Arbitrator awarded as "back pay." Back pay is generally considered to be the amount of wages and benefits an employee would have earned at his former job had the employer not terminated his employment. *See W. Middlesex Area Sch. Dist. v. Pa. Human Relations Comm'n*, 394 A.2d 1301, 1304 (Pa. Cmwlth. 1978). The Arbitrator in the instant case awarded damages for lost wages that Sherman would have earned at a *different* job had he been allowed to take on off-duty employment. Thus, the damages awarded by the Arbitrator are more appropriately characterized as lost wages, and, in this opinion, we refer to the form of damages awarded by the Arbitrator as "lost wages."

4

Arbitrator, rather than the Arbitrator's power to decide the issue of off-duty employment, and, thus, the Arbitrator did not exceed his jurisdiction. *Sherman I*, slip op. at 8.

We further held that the Award violated the Township's procedural due process rights because the Arbitrator issued an award ordering the Township to "make [Sherman] whole for the net ('take home') earnings he lost as a result of its forbidding him from [working at Brewstone's]" rather than calculating a specific amount of damages. (R.R. at 54a.) We determined that the Arbitrator triggered a violation of the Township's due process rights by awarding Sherman an unidentified amount of damages for a potential loss of off-duty wages without allowing the Township to submit arguments or present evidence on the issue of lost wages. Accordingly, we vacated the Award to the extent that it awarded damages in the form of lost wages and remanded the matter to the trial court with the instruction that the trial court remand the matter to the Arbitrator for further proceedings.

On October 2, 2015, the Arbitrator conducted a hearing on the issue of damages. At the October 2, 2015 hearing, Sherman called as a witness Kenny Rosensteel, the former assistant general manager of Brewstone's, who testified that a normal work day for Sherman would have been from 11 p.m. to 2 a.m. and he would have been paid at a rate of $60 per hour. Rosensteel additionally testified that Brewstone's hosted special events where Sherman could have worked additional hours. The Township offered a Bureau of Labor Statistics document indicating that the median wage for "Security Guards and Gaming Surveillance Officers" was $11.55 per hour in 2012. (R.R. at 70a.) The Township also provided Sherman's time and attendance records, which included dates that

5

Sherman took sick leave or vacation time. The Township entered into evidence a letter, dated September 10, 2013, advising counsel for the WPC that it would permit Sherman to assume off-duty employment at Brewstone's as of that date. Brewstone's ceased operations on July 18, 2014, after which Sherman began working intermittently off-duty at Buffalo Wild Wings and the Residence Inn for approximately 3-4 hours per week at a rate of $60 per hour.

The Arbitrator calculated an award of lost wages for the time period of August 21, 2012, when the Township denied Sherman's request for off-duty work, and September 10, 2013, when the Township sent a letter advising WPC that it would permit Sherman to pursue off-duty employment. The Arbitrator found that there were a total of 165 potential work days for Sherman during that time period and that, based on his vacation and sick leave history, he likely would have worked 139 of those days for 3 hours per day, for a total of 417 potential work hours. The Arbitrator further concluded that Sherman would have been paid at a rate of $60 per hour. Accordingly, the Arbitrator issued a supplemental award ordering the Township to compensate Sherman for the lost potential work hours in the amount of $25,020.00.

On December 23, 2015, the Township filed in the trial court a petition to vacate the grievance arbitration award, which is the subject of the appeal now before this Court. The Township argued that the Arbitrator violated the due process rights of the Township by granting damages for lost wages when the issue of lost wages was not included in the original grievance. On June 20, 2016, the trial court denied the Township's petition and confirmed the supplemental award, concluding that this Court's earlier decision had determined that the Arbitrator had

jurisdiction to decide whether Sherman was entitled to damages in the form of lost wages.

The Township raises the following issues before this Court: (1) whether the Arbitrator violated the Township's due process rights by awarding lost wages, even though Sherman did not expressly request damages in the form of lost wages in his initial grievance; (2) whether the Arbitrator exceeded his authority by concluding that Sherman was not required to specifically request lost wages in his initial grievance; and (3) whether the trial court erred in concluding that the issues raised by the Township had been previously decided by our decision in *Sherman I*. Sherman argues that the issues of the Arbitrator's jurisdiction and his authority to award damages in the form of lost wages were previously decided by this Court, and, thus, the Township is barred by principles of *res judicata* or collateral estoppel from relitigating those issues now on appeal.

We initially address Sherman's argument that the issues raised by the Township in the instant appeal are barred by principles of *res judicata* and collateral estoppel. *Res judicata* and collateral estoppel preclude parties from contesting claims and issues that have been previously litigated. *In re Stevenson*, 40 A.3d 1212, 1222 (Pa. 2012). Our Supreme Court has explained the doctrine of *res judicata* as follows:

> The term "res judicata" is often sweepingly used, by courts and litigants alike, to refer to the various ways in which a judgment in one action will have a binding effect in a later action. "Res judicata" encompasses the modern principle of issue preclusion (traditionally known as estoppel), which is the common law rule that a final judgment forecloses relitigation in a later action involving at least one of the original parties, of an issue of fact or law which was actually litigated and which was necessary to the original judgment.

7

*Clark v. Troutman*, 502 A.2d 137, 139 (Pa. 1985). To support a claim of *res judicata*, a party must show a concurrence of four conditions: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Itama Dev. Assocs., LP v. Zoning Hearing Bd. of Twp. of Rostraver*, 132 A.3d 1040, 1049 (Pa. Cmwlth. 2016). "The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights." *Takacs v. Indian Lake Borough*, 10 A.3d 416, 418 (Pa. Cmwlth. 2010).

The doctrine of collateral estoppel, or issue preclusion, precludes the relitigation of issues of fact or law determined in a prior proceeding. *Mason v. Workmen's Comp. Appeal Bd. (Hilti Fastening Sys. Corp.)*, 657 A.2d 1020 (Pa. Cmwlth.), *appeal denied*, 668 A.2d 1140 (Pa. 1995). Collateral estoppel applies if: (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to actually litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *Liberty Mut. Ins. Co. v. Bureau of Workers' Comp.*, 37 A.3d 1264, 1270 n.12 (Pa. Cmwlth.), *appeal denied*, 53 A.3d 51 (Pa. 2012).

Although Sherman couches his argument that the issues raised by the Township in the instant appeal have already been decided by this Court in terms of

8

*res judicata*, this argument is more properly founded in the doctrine of the law of the case. Our Supreme Court has explained the law of the case doctrine as follows.

> The doctrine of the 'law of the case' is that, when an appellate court had considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the same case, reverse its previous ruling even though convinced that it was erroneous. It is not, however, inflexible. It does not have the finality of the doctrine of *res judicata*. . . . The rule of 'the law of the case' is one largely of convenience and public policy, both of which are served by stability in judicial decisions. Thus[,] there is an abundance of authority to the effect that where a prior decision is palpably erroneous, it is competent for the court, not as a matter of right but of grace, to correct it upon a second review . . . where, following the decision on a former appeal, the court in another case has laid down a different rule either expressly or by necessary implication overruling the previous decision

*Burke v. Pittsburgh Limestone Corp.*, 100 A.2d 595, 598 (Pa. 1953).

In *Sherman I*, the Township raised the issue of whether the Arbitrator lacked jurisdiction to consider the lost wages issue based upon the allegation that Sherman failed to raise the issue in a timely manner—*i.e.*, that Sherman failed to seek damages for lost wages in his initial grievance. Citing *Bensalem Township*, this Court held that "where the parties submitted to the Arbitrator the issue of whether the Township violated the CBA by refusing to permit Sherman to work, the Arbitrator properly exercised his jurisdiction over that issue." *Sherman I*, slip op. at 8. With regard to the issue of due process, the Township argued that its due process rights were implicated, because it was not afforded an opportunity to respond to the question of whether Sherman should be awarded lost wages and, if so, how much should be awarded. We remanded to the trial court, with instruction to remand the matter to the Arbitrator to take whatever procedural measures are

9

required to determine whether Sherman is entitled to damages, and, if so, the amount of damages. The Arbitrator complied with our instruction and held a hearing where evidence was entered into the record. The Township does not challenge in this appeal any procedural aspect of the Arbitrator's supplemental evidentiary hearing but, instead, seems to suggest that the Arbitrator violated its due process rights by holding a hearing allowing arguments and evidence on the issue of damages. Such an argument is contrary to our prior decision in *Sherman I*. "The due process clause does not create a right to be deliberately obtuse as to the nature of a proceeding. Appellees here knew exactly what was happening to them and why." *Dep't of Transp. v. McCafferty*, 758 A.2d 1155, 1163 (Pa. 2000). Had the Township's right to due process precluded the Arbitrator from considering the issue of damages, this Court would not have remanded the matter to the trial court for further proceedings.

It is axiomatic that a violation of a party's right to due process does not entitle an aggrieved defendant to dismissal of the claim. *Caba v. Weaknecht*, 64 A.3d 39, 66 (Pa. Cmwlth.), *appeal denied*, 77 A.3d 1261, (Pa. 2013). Instead, when "proceedings are tainted by procedural irregularities, such as the lack of adequate notice, the remedy is a remand for an additional hearing after a new notice." *Id.* Thus, our prior decision finally settled the issues of the Arbitrator's authority to issue an award that includes damages for lost wages and whether the Township received due process on the issue of damages. The Township received all the process it was entitled to at the supplementary hearing.

Even if we were to consider the Township's arguments on appeal, they are without merit. In a grievance arbitration matter arising under Act 111, such as this one, our narrow scope of review limits the objections to an award that

we may consider. *Pennsylvania State Police v. Pennsylvania State Troopers'* *Ass'n (Betancourt)*, 656 A.2d 83, 85-86 n.4 (Pa. 1995). The only grounds that we may evaluate to support a reversal of an arbitrator's award are limited to the following: (1) awards that are outside the jurisdiction of the arbitrator; (2) awards that are the result of irregular proceedings; (3) awards that reflect an excess of the arbitrator's powers; and (4) awards that are made where a violation of a party's constitutional rights has occurred. *Fraternal Order of Police, Flood City Lodge No. 86 v. City of Johnstown*, 39 A.3d 1010, 1012 n.8 (Pa. Cmwlth.), *appeal denied*, 57 A.3d 72 (Pa. 2012).

The Township first argues that the Arbitrator violated its due process rights by holding that Sherman was not required to raise the issue of damages in the form of lost wages in his initial grievance. The Township asserts that they were deprived of an opportunity to present evidence on and argue the issue of lost wages before the Arbitrator. The Township cites several cases in support of this argument; however, each is distinguishable.

The Township cites *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259 (Pa. 2009), for the proposition that an arbitrator violates the due process rights of a party when the arbitrator precludes that party from presenting evidence on a particular issue. In *Breary*, the arbitrator, upon request by the Fraternal Order of Police, Lodge No. 5 ("FOP"), issued a subpoena requiring the City of Philadelphia ("City") to provide certain records of internal grievance proceedings. The City failed to comply with the subpoena, and the arbitrator granted the FOP's motion for sanctions, precluding the City from presenting testimony or evidence based on any materials included in the subpoena. The City argued that it was deprived of its right to due process and filed a petition

11

to vacate the arbitration award with the Philadelphia Court of Common Pleas, which denied the petition. On appeal, this Court reversed the Philadelphia Court of Common Pleas, holding that the sanction of complete preclusion of evidence, which equated to a dismissal of the City's case, was a violation of due process, and we remanded for a new arbitration. The Supreme Court affirmed our decision, concluding that the City was significantly prejudiced by the arbitrator's sanction precluding it from presenting evidence and that there was no evidence of willful misconduct by the City. Thus, the Supreme Court held that the City was deprived of its due process rights. Notably, the Supreme Court opined: "we reiterate, however, that we in no way approve of a challenge to sundry rulings by an arbitrator on due process grounds. To be sure, the unique circumstances of this case epitomize the very reason narrow certiorari review . . . is permitted: to remedy a clear procedural due process violation." *Breary*, 985 A.2d at 1274.

Although *Breary* may have supported the Township's arguments raised in its prior appeal in *Sherman I*, it does not support the Township's arguments in the instant appeal. The relief granted by this Court in *Breary,* and affirmed by the Supreme Court, was a remand to the arbitrator to give the City the opportunity to present evidence that it was not originally allowed to present. This is the precise type of relief granted to the Township in *Sherman I*. Further, *Breary* deals only with a party's due process rights in the context of a deprivation of the ability to present evidence of a claim or defense. It does not address a due process violation for lack of notice for failure to raise the specific damages sought in an initial grievance.

The Township also cites our holding in *In re Arbitration Award Between Lower Yoder Township Police & Lower Yoder Township*, 654 A.2d 651

12

(Pa. Cmwlth. 1995) (*Yoder*). In *Yoder*, Lower Yoder Township (LYT) and Lower Yoder Township Police (Police) entered into negotiations regarding the terms of a collective bargaining agreement and, after reaching an impasse in negotiations, proceeded to arbitration over the terms of the agreement. A panel of three arbitrators issued an award involving numerous issues related to the agreement. LYT petitioned the Cambria County Court of Common Pleas to review and, presumably, vacate or amend the award. LYT argued that the arbitrators exceeded their authority by creating provisions for (1) a three year contract term, (2) a guaranteed wage/no layoff clause, and (3) the creation of the rank of lieutenant, which were not raised in the notice of arbitration. The Cambria County Court of Common Pleas denied LYT's petition, concluding that the arbitrators did not exceed their authority. On appeal, this Court reversed, in part, and remanded, in part. Specifically, we concluded that "it is obvious that the Police raised the issue of the length of the contract in the notice of binding arbitration, since subparagraph (f) of the notice is titled 'length of contract.' Hence, the arbitrators were well within their discretion to award a three year contract term." *Yoder*, 654 A.2d at 654. We also determined that:

> [T]he Police also raised the issue of compensation and wages in the notice. Notice of Arbitration, ¶ (a) (compensation and wages). *Once the issue of wages was properly placed in dispute, the Board had the power to resolve that issue in a fair manner within the total context of the award.* . . . Wages are not the only form of "compensation." In lieu of a pay raise, the [arbitrators] awarded compensation to the Police in the form of guaranteed employment (forty hours of work per week and vacation and holiday pay) to the four regular full time police officers. This resolution of the compensation issue was, in our view, within the [arbitrators'] jurisdiction.

13

*Id.* (emphasis added) (internal citations omitted). The only portion of the award that we vacated was the provision creating a new position of lieutenant. We found that no provision of the notice of arbitration could reasonably be interpreted to put both parties on notice that the creation of a new officer rank was at issue. *Id.*

In *Yoder*, although we vacated the portion of the arbitrators' award creating a new position, we affirmed the portion of the award relating to guaranteed employment, vacation and holiday pay, and forty-hour work weeks, even though those issue were not explicitly raised in the notice of arbitration. We concluded that those issues were reasonably and logically related to the issue of "wages and compensation" raised in the notice of arbitration. Thus, an arbitrator has some leeway to craft an award that addresses the issues raised by the parties. The instant case is more akin to the issue of wages and compensation addressed in *Yoder* than the issue of the creation of a new position within the Police. Similarly, when an officer grieves a denial of outside employment, it can reasonably be inferred that the officer should be compensated if he was wrongfully precluded from engaging in that employment. For these reasons, *Yoder* does not support the Township's position, and the Arbitrator did not violate the Township's due process rights by awarding damages in the form of lost wages.

The Township next argues that the Arbitrator exceeded his authority by determining that Sherman was not required to raise a request for damages in the form of lost wages. In the Supplementary Award, the Arbitrator concluded that "[a]t no point however does the grievance procedure require [Sherman] to specify the relief sought. . . . [S]ome collective bargaining agreements require that the [g]rievant specify the relief sought, but this one does not." (R.R. at 73a.) As we explained in *Sherman I*, the jurisdiction of an arbitrator goes to his or her power to

14

decide an issue in dispute rather than to his or her fashioning of an award. *Sherman I*, slip op. at 8. The Township does not contest that the Arbitrator had authority to decide the issue of whether the Township wrongfully refused to allow Sherman to engage in outside employment. Thus, unless the Arbitrator violates the Township's due process rights or his authority to award damages is expressly limited under the terms of the CBA, the Arbitrator has discretion to fashion an appropriate remedy even though Sherman did not request the specific damages eventually awarded. *See Greater Latrobe Area Sch. Dist. v. Pa. State Educ. Ass'n*, 615 A.2d 999, 1002 n.1 (Pa. Cmwlth. 1992); *see also McKeesport Area Sch. Dist. v. McKeesport Area Educ. Ass'n*, 424 A.2d 979, 982 (Pa. Cmwlth. 1981) ("An arbitrator must be given a certain amount of flexibility to reach an amicable solution and should not be limited in his problem solving to the exact language of the grievance."). Thus, the Arbitrator did not exceed his authority by concluding that Sherman was not required to explicitly request damages in the form of lost wages in his initial grievance.

Finally, the Township argues that the trial court erred by holding that this Court previously decided the issues raised by the Township. As noted above, we conclude that, under the law of the case doctrine, *Sherman I* finally and conclusively decided the issues now raised by the Township on appeal. Thus, the trial court did not err in concluding that *Sherman I* finally decided all issues now raised by the Township.

Accordingly, the order of the trial court is affirmed.

_____
P. KEVIN BROBSON, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wilkins Township,                    :
                      Appellant       :
                                      :
        v.                            :    No. 1219 C.D. 2016
                                      :
The Wage Policy Committee of the      :
Wilkins Township Police Department    :

# **O R D E R**


AND NOW, this 18th day of May, 2017, the order of the Court of Common Pleas of Allegheny County is AFFIRMED.


_____
P. KEVIN BROBSON, Judge