Carmichaels Area School District, Appellant *v.* Carmichaels Area Education Association, Appellee.

Argued May 2, 1978, before President Judge Bowman and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DiSALLE.

*James Hook,* with him *Hook & Hook,* for appellant.

*Ronald N. Watzman,* for appellee.

*Michael I. Levin,* with him *William Fearen,* and *Cleckner & Fearen,* for amicus curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE BLATT, August 4, 1978:

The Carmichaels Area School District (District) appeals here from an order of the Court of Common Pleas of Greene County which dismissed the District's appeal of an arbitrator's decision. The arbitrator had sustained a grievance filed by the Carmichaels Area Education Association (Association).

In January 1975, the District and the Association began negotiating a collective bargaining agreement for the 1975-76 school years to replace an agreement which was to expire June 30, 1975. In May 1975, the District adopted a calendar for the 1975-76 school year which called for 180 days of instruction and two in-service days. When the parties were unable to reach a new agreement and school reopened on September 3, 1975, the Association went out on strike and the work stoppage lasted for sixteen instructional days, ending on September 24, 1975 with the execution of a new collective bargaining agreement (agreement).

The grievance which is the subject of this appeal was filed by the Association in October 1975, following the District's announcement that the instructional days lost because of the strike would not be made up. The grievance charged that the decision not to reschedule the strike days violated several provisions of the parties' agreement in that the action would reduce the annual salaries paid the teachers for the 1975-76 school year below the figures specified in the agreement. In January 1976, the District reduced the teacher's pay checks to reflect a deduction proportionate to the number of instructional days missed because of the strike, and, when the grievance was finally submitted to arbitration, the arbitrator sustained the grievance, holding that the District owed the Association members the unpaid balance of their annual salaries as such were specified in the agreement. The lower court affirmed the arbitrator's decision on appeal and this appeal followed.

This Court's scope of review of an arbitrator's award is defined in Sections 10 and 11 of the Act of April 25, 1927, P.L. 381, *as amended* (Arbitration Act), 5 P.S. §§170, 171, and if, in resolving the dispute between the contracting parties, the arbitrator has had

to determine the intention of the parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, Section 11(d) establishes a scope of review similar to the "essence test" recognized in the federal courts. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977). Under this test, the arbitrator's interpretation must be upheld if it "can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3rd Cir. 1969). And an arbitrator's interpretation of clauses of a collective bargaining agreement defining those matters to be submitted to arbitration involves a factual determination of the parties' intention and must be reviewed with reference to the "essence test." *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 32 n.7, 381 A.2d 849, 851 n.7 (1977). The District argues here[1] (1) that the grievance was not arbitrable, (2) that the the arbitrator's award did not draw its essence from the agreement and, (3) that the arbitrator's award is illegal and therefore unenforceable.

The arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is statutorily compelled by

[1] The Association originally contested the jurisdiction of the court of common pleas to review the arbitrator's decision. Subsequent to the lower court's proceedings here, our Supreme Court filed its opinion in *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977), where that Court held that pursuant to Pa. R.C.P. No. 247, such appeals were properly taken to the court of common pleas. Both parties concede that the issue was decided there and we see no need to address it here.

Section 903 of the Public Employe Relations Act[2] (PERA), 43 P.S. §1101.903. Judicial inquiry into the arbitrability of a grievance is limited to a determination of (1) whether or not the parties entered into an agreement to arbitrate and (2) whether or not the dispute falls within the arbitration clause. *Lincoln University v. Lincoln University Chapter, American Association of University Professors*, 467 Pa. 112, 119, 354 A.2d 576, 580 (1976); *North Star School District v. Pennsylvania Labor Relations Board*, 35 Pa. Commonwealth Ct. 429, 433, 386 A.2d 1059, 1061 (1978). In the present case, the agreement establishes a five-step grievance procedure leading to binding arbitration at the last step, and a grievance is defined as "an alleged misinterpretation or misapplication of the provisions of this collective bargaining agreement." The first issue we must examine, therefore, is the reasonableness of the arbitrator's conclusion that the grievance here is one which falls within the agreement's arbitration clause. *County of Allegheny v. Allegheny County Prison Employees Independent Union, supra.*

The District argues initially that the grievance is not arbitrable because it concerns scheduling of the school calendar, a matter left to the discretion of the District both in the agreement and in the Public School Code of 1949[3] (School Code). The arbitrator interpreted the grievance, however, as not being directed to the District's prerogative to set a school schedule but rather to the impact of the shortened school year on the annual salaries specified in the agreement. The arbitrator held that insofar as the grievance constituted a challenge to the District's unilateral action

---

[2] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.101 et seq.

[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §1-101 et seq.

which directly resulted in a loss of salary to members of the Association, it was cognizable as a grievance arising out of the interpretation of the provisions of the parties' agreement. Our review of the arbitrator's holding compels us to conclude that it is based on a reasonable interpretation of the agreement. The thrust of the grievance was directed to the effect of the shortened school year on the teacher salaries specified in the agreement. Specifically, the grievance contested the District's interpretation that the salaries specified in the agreement could be calculated on a per diem basis with a proration for the instructional days lost because of the strike. Because the grievance here arose out of differing interpretations of provisions of the agreement, we agree with the arbitrator's conclusion that the grievance was arbitrable.

The District also maintains that the arbitrator's award of pay to the Association members does not draw its essence from the agreement. Essentially, the District argues that because the issue of the strike days was not specifically addressed in the agreement, the arbitrator erred in awarding the pay, and this should have been the subject of negotiation rather than of arbitration between the parties. The arbitrator's award, however, was based on his interpretation of Articles VI and XV of the agreement.[4] Noting that

---

[4] These provisions are as follows:

ARTICLE VI
TEACHER WORK YEAR

. . . .

B. SCHOOL WORK YEAR
1. The school work year for the professional employees shall be within the confines of the school calendar and shall not exceed 182 days of which 180 days shall be for instruction.

. . .

Article VI did not establish a minimum number of days for the school year but only set a maximum of 182 days and also that the waiver clause contained in Article XV stated that the agreement constituted the entire understanding between the parties, the arbitrator concluded that the District had obligated itself from the agreement's effective date to pay the salaries specified in the agreement for a school year which could not exceed 182 days. We believe that this interpretation is rationally derived from the language and context of the agreement. We believe, therefore, that the arbitrator did not err in making the award. While we believe that the District's contention that the matter of the strike days should have been clarified in the negotiations is reasonable, we also believe that the arbitrator's opinion accurately described the situation which resulted from the District's failure to do so:

> While at the conclusion of the strike the Board was free to adopt any school calendar consistent with state law, it was not free to erode the wage package bargained out by the Parties' representatives and which brought about the conclusion of the strike. At that very time, if the Dis-

ARTICLE XV
WAIVER CLAUSES

. . . .

B. WAIVERS CLAUSE

> The parties agree that this Agreement constitutes the entire understanding between the parties, and that no additional negotiations on this Agreement will be conducted on any item, whether contained herein or not, during the life of this Agreement unless the Board creates a new position within the bargaining unit in which case the Board agrees to negotiate the compensation for such position with the Association. This language is not meant to exclude negotiations agreeable, in writing, to both parties during the term of this contract.

trict did desire to extract any form of offset for the strike, and it may well have seen fit to do so, it had to accomplish that goal through negotiation; instead, it did agree to pay the salaries set forth in Appendix A for a school work year which could not exceed 182 days. While unquestionably it retained the power to establish the length of the school year, within the 182-day limit and consistent with state law, it could not thereby alter the agreed upon salary.

The District, joined by the amicus curiae, argues finally that the arbitrator's award of pay is illegal and therefore unenforceable, and bases its allegations of illegality on Section 1006 of PERA, 43 P.S. §1101.1006 and Section 1121 of the School Code, 24 P.S. §11-1121. Section 1006 provides:

> No public employe shall be entitled to pay or compensation from the public employer for the period engaged in any strike.

Section 1121 sets out a mandated form for employment contracts between school districts and professional employes and provides that an anual salary shall be paid "less the contribution required by law to be paid to the Public School Employes' Retirement Fund, and *less other proper deductions for loss of time.*" (Emphasis added.) The amicus curiae and the District argue that the award of pay withheld by the District was actually payment for the sixteen days that the Association was on strike and that such an award is prohibited by the above cited statutory provisions. We agree that public employes cannot be awarded pay for any period during which they engaged in a strike, but we do not believe that the arbitrator made such an award here. Rather, he made an award based on his interpretation that the parties had bargained for specified salaries for a school year to be scheduled by

the District which would not exceed 182 days in length. The effective date of the agreement embodying this understanding was September 24, 1975, a date coincident with the end of the strike.[5] The agreement therefore contemplated future performance of their professional duties by the Association members from this date forward. Neither the grievance nor the arbitrator's eventual award was concerned with pay for the period during which the Association was on strike, a period which predated the agreement, but rather with the District's failure to abide by its contractual obligation to pay specified salaries for the 1975-76 school year which the District was free to schedule as it chose. Because the award here was not compensation for the days the Association was on strike, we do not believe that the ward is illegal.

The order of the lower court is affirmed.

ORDER

AND Now, this 4th day of August, 1978, the order of the Court of Common Pleas of Greene County, dated May 2, 1977 and docketed at 11 May Term 1976, is hereby affirmed.

---

[5] Article XVIII establishes the agreement's effective date and provides as follows:

ARTICLE XVIII
DURATION OF AGREEMENT
A. EFFECTIVE DATE
This Agreement shall be effective as of September 24, 1975, and shall continue in effect until June 30, 1978, subject to negotiation over a reopener on wages and fringe benefits only for the period of July 1, 1977, to June 30, 1978. The Agreement shall not be extended orally and it is expressly understood that it shall expire on the date indicated.

---

DISSENTING OPINION BY JUDGE MENCER:
I respectfully dissent.

Section 11(d) of the Act of April 25, 1927, P.L. 381, *as amended* (Arbitration Act), 5 P.S. §171(d), authorizes a court to correct or modify an award "[w]here the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict." This section "places an award on the same footing as the verdict of a jury [and] mistakes of law may be rectified on appeal." *City of Lebanon v. District Council, 89, AFSCME,* 36 Pa. Commonwealth Ct. 442, 446, 388 A.2d 1116, 1118 (1978).

Section 1121 of the Act of March 10, 1949, P.L. 30, *as amended* (Public School Code), 24 P.S. §11-1121, provides that professional employes be paid an annual salary "less the contribution required by law to be paid to the Public School Employes' Retirement Fund, and *less other proper deductions for loss of time.*" (Emphasis added.)

Here the Carmichaels Area School District (School District) scheduled 180 days for instruction. Sixteen of those days were lost because of the work stoppage resulting from the teachers' strike. Section 1121 of the Public School Code directs deductions from annual salary for "loss of time." Certainly the 16 days scheduled for instruction during which no instruction was rendered because of the strike constituted loss of time. Therefore, the School District was in compliance with the Public School Code when it made deductions for the loss of 16 instructional days which had been scheduled but not offered because of the work stoppage.[1] The award of the arbitrator directing payment by the

---

[1] This writer has long held to the view that the mandatory attendance requirements of the Public School Code require school boards to reschedule instruction days lost because of a school strike, limited only by the end of the school year and the Public School Code prohibitions as to schools being open on certain holidays and Satur-

School District for the 16 days of lost time is prohibited by Section 1121 of the Public School Code and is therefore against the law.[2] Like any other mistake of law, it should be rectified on appeal.

I would reverse the order of the lower court.

President Judge Bowman joins in this opinion.

---

days and Sundays. *Root v. Northern Cambria School District*, 10 Pa. Commonwealth Ct. 174, 309 A.2d 175 (1973) (Mencer, J., dissent). Although not without some doubt, the majority of this Court is of the view that it is within the discretion of the school board as to whether the school calendar should be altered to make up the days lost because of a work stoppage. *Compare Commonwealth v. Mifflin County School Board*, 30 Pa. Commonwealth Ct. 213 (1977) (Order in original jurisdiction and Opinion by Kramer, J.), *with Pittenger v. Union Area School Board*, 24 Pa. Commonwealth Ct. 442, 356 A.2d 866 (1976) (Court divided equally on rationale for result reached).

[2] The majority reasons that the agreement being interpreted by the arbitrator contemplated future performance of the professional duties of the teachers from September 24, 1975 forward and thus the eventual award was not concerned with pay for the period during which the Association was on strike, a period which predated the agreement. However, this point of view overlooks the legal principle that no private agreement can operate as a waiver of the provisions of a statute expressing public policy, in the instant case the provisions of Section 1121 of the Public School Code. *Gianfelice Unemployment Compensation Case*, 396 Pa. 545, 153 A.2d 906 (1959).