McKeesport Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Doris J. Dzombak, Respondents.

McKeesport Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Margaret A. Kuhl, Respondents.

McKeesport Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Rita M. Teti, Respondents.

McKeesport Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Edward F. Thomas, Respondents.

McKeesport Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Ann E. Putman, Respondents.

McKeesport Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Darlene C. Beachley, Respondents.

McKeesport Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Edmund S. Kalinoski, Jr., Respondents.

McKeesport Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Doris Martino, Respondents.

McKeesport Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Phyllis L. Spiegel, Respondents.

McKeesport Area School District, Petitioner. *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Jane G. Beatty, Respondents.

McKeesport Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Alex E. Bahus et al., Respondents.

Argued December 6, 1978, before President Judge Bowman and Judges Wilkinson, Jr., Mencer, Rogers, Blatt, DiSalle and MacPhail. Judges Crumlish, Jr. and Craig did not participate.

*John P. Papuga,* with him *Peter J. King; Tucker, Arensberg & Ferguson* and *Lewis J. Nescott,* for petitioner.

*Daniel R. Schuckers,* Assistant Attorney General, and *Shelley W. Elovitz,* with them *Ronald N. Watzman; Watzman, DeAngelis and Elovitz;* and *Gerald Gornish,* Acting Attorney General, for respondents.

*Michael I. Levin,* with him *William Fearen,* for amicus curiae, Pennsylvania School Boards Association.

Opinion by Judge Mencer, February 7, 1979:

The above captioned cases were consolidated for argument before this Court because they all involve

unemployment compensation claimants who were unemployed during work stoppages which resulted from labor disputes with the McKeesport Area School District (School District). The Unemployment Compensation Board of Review (Board) held that the claimants had been "locked out" within the meaning of Section 402(d) of the Pennsylvania Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802 (d), and were therefore eligible for Special Unemployment Assistance (SUA) benefits, pursuant to Title II of the Emergency Jobs and Unemployment Assistance Act of 1974 (Assistance Act), 26 U.S.C.A. §3304.[1] The School District appealed to this Court.[2] We affirm.

While cases at Nos. 1458 through 1467 C.D. 1977 involve identical facts, No. 1468 C.D. 1977 involves different facts, and that case will therefore be considered separately.

## Nos. 1458-1467 C.D. 1977

The referee's findings of fact in these cases are exceptionally complete and detailed, thus making our

---

[1] While a claimant's initial eligibility for SUA benefits must be determined by reference to the Assistance Act, his or her ultimate eligibility is governed by applicable state law. *See* Section 207 of the Assistance Act.

[2] The claimants have filed motions to quash the School District's appeals on the basis that an employer lacks standing to appeal an award of SUA benefits. Section 207 of the Assistance Act and the regulations adopted pursuant to that Act, particularly 20 C.F.R. §619.7(b), provide that state law governs the right to appeal. There is no question that an employer has the right to appeal a grant of benefits under the Pennsylvania Unemployment Compensation Law. *Susquehanna Collieries Co. v. Unemployment Compensation Board of Review*, 338 Pa. 1, 11 A.2d 880 (1940). Therefore, an employer also has standing to appeal a grant of SUA benefits, and we will dismiss the motions to quash.

task somewhat easier. The following is a summary of the referee's findings which have not been challenged by the School District.

Claimants are school teachers employed by the School District and are members of the McKeesport Area Association (Union). The collective bargaining agreement between the School District and the Union was scheduled to expire on August 30, 1976, and negotiations for a new agreement began in December 1975. During these negotiations, the Union made it clear that its members were willing to continue working beyond the August 30 deadline under the terms and conditions of the existing contract for as long as negotiations continued. On August 30, no new agreement having been concluded, the Union and the School District agreed to extend the expired contract on a day-to-day basis for as long as progress was being made in negotiations.

Pursuant to this agreement, claimants reported on their first scheduled day of work, September 3, 1976, a teachers' "in-service day." Classes were scheduled to begin on September 7, 1976. On Saturday, September 4, 1976, the Union's president became ill and the Union therefore requested that the negotiating session scheduled for that day be continued until Sunday, September 5. Upon receiving this request, the School District immediately notified the Union that the School District was cancelling the day-to-day extension of the expired agreement. The Union again advised the School District that its members were willing to continue to work under the terms and conditions of the agreement but the School District refused to allow work under those conditions.

Students reported to school on the first day of classes, September 7, but were later sent home because the Union members did not report for work. On September 8, 1976, the Union again expressed its willing-

ness to work for an indefinite period under the expired agreement, but the School District again refused this offer. As a result, the work stoppage continued through September 23, 1976, when the dispute was submitted to arbitration and the School District agreed to allow work under the terms and conditions of the expired agreement. SUA benefits were granted to claimants for the period of the work stoppage.

The School District's first argument is based on Section 203(b) of the Assistance Act which, at the time this case arose, provided as follows:

(b) An individual who performs services in an instructional, research, or principal administrative capacity for an educational institution or agency shall not be eligible to receive a payment of assistance or a waiting period credit with respect *to any week commencing during the period between two successive academic years (or, when the contract provides instead for a similar period between two regular but not successive terms, during such similar period)* if—

(1) such individual performed services in any such capacity for any educational institution or agency in the first of such academic years or terms; and

(2) such individual has a contract to perform services in any such capacity for any educational institution or agency for the later of such academic years or terms. (Emphasis added.)

The School District contends that the "academic year" did not begin until September 23, 1976, when both teachers and students reported for work, and that the claimants were thus unemployed between "two successive academic years" and ineligible for SUA benefits under the above provision. We do not agree.

First, we note that, had the work stoppage commenced after only one day of academic instruction or even after half a day, Section 203(b) would clearly have no application. We are reluctant to hold that such an insignificant fact is determinative. Moreover, the phrase in parenthesis which follows the term "academic years" in Section 203(b) refers to a "*similar* period between two *regular* . . . terms" (emphasis added), indicating that Congress considered an "academic year" to be a regular, scheduled period, as opposed to an irregular, unpredictable period. The period of unemployment involved here did not occur between two regular periods; in fact, the period of unemployment arose suddenly and virtually without warning. In light of these considerations, we are convinced that Congress did not intend Section 203(b) to be applicable to the facts of this case.

The School District also argues that the claimants were not "locked out" but were on "strike" and therefore ineligible for benefits by virtue of Section 402(d) of the Pennsylvania Unemployment Compensation Law.[3] The test to be applied in distinguishing a

---

[3] Section 402(d) provides that an employee shall be ineligible for any week

[i]n which his unemployment is due to a stoppage of work which exists because of a labor dispute (*other than a lock-out*) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute. (Emphasis added.)

strike from a lockout for purposes of Section 402(d) was enunciated in *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 444-45, 163 A.2d 91, 93-94 (1960):

> Have the employees offered to continue working for *a reasonable time* under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; *and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout'* and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply. (Emphasis added.)

The School District contends that the Union's agreement to extend the expired contract on a day-to-day basis is insufficient to discharge the Union's duty to offer to continue working under the preexisting terms and conditions for "a reasonable time." However, what constitutes a "reasonable time" varies depending on the particular circumstances. *Compare Lerch Unemployment Compensation Case*, 400 Pa. 446, 163 A.2d 535 (1960), *with Nelan Unemployment Compensation Case*, 215 Pa. Superior Ct. 310, 264 A.2d 726 (1969). There is no indication that a day-to-day extension was unreasonable under the circumstances of this case, and the fact that the School District agreed to such an extension indicates that it felt it could indeed operate satisfactorily under such an arrangement.

Moreover, the School District's argument overlooks the fact that there is nothing in the record to

suggest that it was the Union, rather than the School District, that wanted to restrict the agreement to a day-to-day extension rather than a longer period. What *is* of record is that four days after agreeing to the day-to-day arrangement the School District cancelled it for the trivial reason that, because of its president's illness, the Union wished to postpone negotiations for one day.

Under these circumstances, it was clearly the School District and not the Union which refused to maintain the status quo, and the Board properly concluded that the work stoppage was a lockout.[4] *See Unemployment Compensation Board of Review v. Sun Oil Co.*, 476 Pa. 589, 383 A.2d 519 (1978) (union and employer agreed to day-to-day extension; employer unilaterally cancelled extension and altered status quo) (award of benefits affirmed by Supreme Court).

1468 C.D. 1977

The claimant in this case is a representative member of the McKeesport Maintenance and Custodial Union (Union). The Union's collective bargaining agreement with the School District expired on June 30, 1976, but the parties agreed to extend it through

---

[4] The School District argues that the claimants had a *statutory* right to work under the preexisting terms and conditions of employment by virtue of Section 1151 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1151, and that their failure to seek to enforce this right through the hearing and appeal procedures applicable to the School Code precludes a grant of benefits. *Cf. Hughes Unemployment Compensation Case*, 187 Pa. Superior Ct. 252, 144 A.2d 685 (1958) (failure to first resort to grievance machinery of existing collective-bargaining agreement renders work stoppage a "strike"). While Section 1151 prohibits demotions in salary or type of position without a hearing, it simply has no applicability to the many other terms and conditions of employment covered in the typical collective-bargaining agreement, such as working conditions and grievance procedures.

August 15, 1976. No new agreement having been concluded by August 15, the Union and the School District agreed to another extension through August 31. On August 26, it appearing that no agreement would be reached by August 31, the Union offered to continue working for an indefinite period under the terms and conditions of the expired agreement, but the School District advised the Union that there would be no further extension. The Union repeated its offer on August 30, *and four times on August 31,* but on each occasion the School District advised the Union that the old agreement would not be extended. As a result, claimant and the other members of the Union did not report for work on September 1.

Sometime thereafter, each member of the Union received a letter from the School District, *dated August 31, 1976* and postmarked September 1, 1976. The letter ordered the employees to return their keys and stated that ''[a]ny employee desiring to work at this time may report for work and will be compensated at their present salary and benefits.'' Nevertheless, in subsequent negotiations with the Union, the School District never indicated that it would allow work under all of the terms and conditions of the expired agreement, despite the fact that the School District knew the Union would have agreed to such an arrangement. As a result, the employees did not return to work until a new contract was signed on October 30, 1977. Claimant was awarded SUA benefits for the period of the work stoppage.

The only argument made by the School District in this case is that ''[a] formal extension of the expired labor agreement for two months, followed by the employer's written offer to continue employment thereafter under the terms and conditions of the expired agreement pending negotiations is a good faith effort to preserve the status quo.''

With regard to the formal two-month extension, [i]t is . . . the reasonableness of continuing the status quo rather than the length of time it has been maintained that controls, and an employer altering the balance even after aiding in its maintenance for a considerable time, must still demonstrate that such action is essential to the continued operation of the company.

*Unemployment Compensation Board of Review v. Sun Oil Co.,* 19 Pa. Commonwealth Ct. 447, 453, 338 A.2d 710, 713 (1975), *aff'd,* 476 Pa. 589, 383 A.2d 519 (1978).

The School District does not argue, nor does the evidence suggest, that its action in refusing to further extend the agreement was essential.

With regard to the letter dated August 31, 1976, the Union members had good reason to know that it was not a good-faith offer to permit work under all of the terms and conditions of the expired agreement. On the same day that the letter was purportedly written, the School District had *four times* refused the Union's offer to continue working. In addition, the letter itself offered only to "compensate" employees at their "present salary and benefits"; the letter mentioned nothing about the other terms and conditions of the agreement such as the "just cause" and grievance provisions. In fact, the School District's secretary and business manager testified that the School District did not intend to allow the grievance provisions to remain in effect and that the School District would have unilaterally decided which of the nonsalary provisions to allow to continue. Finally, the School District never made the offer to the Union, although it was aware the Union would have accepted an unambiguous, good-faith offer to extend all of the terms and conditions of the expired agreement.

Since the School District rejected several reasonable offers by the Union to maintain the status quo, since the August 31, 1976 letter was not in fact a good-faith offer to extend the agreement, and since the claimant and other Union members had reason to know this, the Board correctly decided that the School District must bear the responsibility for the work stoppage.

Accordingly, for all the reasons set forth above, we will affirm the orders of the Board.[5]

ORDER

AND Now, this 7th day of February, 1979, the motions of the respondents in the above captioned cases to quash the petitions for review filed by the McKeesport Area School District are hereby dismissed. The orders of the Unemployment Compensation Board of Review at Nos. 1458 through 1467 C.D. 1977, all of which are dated June 15, 1977, are hereby affirmed. The order of the Unemployment Compensation Board of Review at No. 1468 C.D. 1977, dated June 16, 1977, is hereby affirmed.

---

[5] If claimants had been paid, or if compensation were payable to them, with respect to the periods of the work stoppages, they would not meet the definition of "unemployed" in Section 4(u) of the Unemployment Compensation Law, 43 P.S. §753(u), and would be ineligible for that reason. The referee, in all of the cases, found that claimants had not in fact been paid for the periods of the work stoppages. The employer is not contending, and the record does not suggest, that compensation is "payable" to the claimants. Nevertheless, we note that a recent decision of this Court would allow an arbitrator to award to claimants such as those involved in these cases their full annual salary, undiminished by deductions for the period of the work stoppages. *Carmichaels Area School District v. Carmichaels Area Education Association*, 37 Pa. Commonwealth Ct. 141, 389 A.2d 1203 (1978). The possibility therefore exists that these claimants may ultimately collect their full annual salary in addition to unemployment compensation. Legislative action would appear to be necessary to prevent such a double recovery.