444 A.2d 1144

SCRANTON FEDERATION OF TEACHERS, LOCAL 1147, AFT, Appellant,

v.

SCRANTON SCHOOL DISTRICT, Appellee.

Supreme Court of Pennsylvania.

Argued Jan. 19, 1982.

Decided April 19, 1982.

Michael Brodie, Philadelphia, for appellant.

Edwin A. Abrahamsen, Scranton, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

LARSEN, Justice.

This protracted litigation began during the 1974–75 school year when the Scranton Federation of Teachers (the Federa-

tion), appellant, went on strike against the Scranton School District (the District), appellee. Due to the impasse in collective bargaining negotiations which led to the strike, the Federation and the District submitted various unresolved matters to the judges of the Court of Common Pleas of Lackawanna County, sitting as arbitrators pursuant to section 804 of the Public Employe Relations Act (PERA), 43 P.S. § 1101.804 (supp. pamphlet 1981–82).

The strike was terminated when the judge/arbitrators issued an award in March, 1975 resolving the various disputed issues, which award included a "make-up time" provision extending the scheduled closing date of June 13, 1975 to June 27, 1975. On May 30, 1975, the district issued a staff bulletin to the teachers which outlined closing procedures to be followed on the last few days of the school year. The teachers complied but, through the Federation, filed a grievance against the District asserting it had unilaterally altered past practice and policy regarding closing procedures (i.e., grade rendering, housekeeping and report card distribution) in derogation of Article 3 of the collective bargaining agreement which provided:

The Board, Federation and their respective representatives shall take no action violative of or inconsistent with any provision of this Agreement or any policy or practice affecting working conditions of teachers existing on the date of the execution of this Agreement or renewals thereof without prior negotiation and agreement with the Federation.

Any complaint arising hereunder shall be presented by only the Federation in accordance with Step 14 of the Grievance Procedure.

A hearing was held on November 10, 1975 before arbitrator Morrison Handsaker of the American Arbitration Association. Arbitrator Handsaker held that the District had, indeed, violated Article 3 of the collective bargaining agreement by unilaterally modifying a practice (the closing procedures) which had existed at the time the agreement was executed. The arbitrator did not, however, award a remedy

for that violation because the parties had not submitted the remedy issue to him. Because the submission agreement mutually stipulated to by the parties did not authorize the arbitrator to determine a remedy, he stated "that it is the responsibility of the parties to negotiate what they can agree upon as an appropriate remedy for this contract violation." Opinion of Arbitrator Handsaker, AAA Case No. 14 30 0918 .75R at 7. Neither party appealed from this decision of January 16, 1976.

Representatives of the Federation met on January 28, 1976 with the District's Superintendent of Schools, Dr. John F. Stephens, to discuss possible remedies. However, on February 10, 1976, Dr. Stephens advised the Federation that the District "deemed the matter closed", brief for appellee at 11, and broke off negotiations. The Federation immediately filed another grievance protesting the District's refusal to remedy its violation of the collective bargaining agreement.

A hearing was held before a second arbitrator, J. Joseph Loewenberg, on July 26, 1976. The issues then submitted were (1) is the grievance arbitrable? and (2) if so, what should the appropriate remedy be, if any?

On the matter of arbitrability, the District took the position that the Federation had had an opportunity at the first arbitration proceeding to request a remedy and that, by failing to do so, the Federation should be precluded from raising this issue at a later time. Essentially, the District's position was (and is) that a grievance arbitration cannot be bifurcated into a breach of bargaining agreement proceeding and a remedy proceeding.

Arbitrator Loewenberg rejected this contention and ruled that, as the matter of the remedy was not part of the stipulated issue at the first arbitration, the Federation was not having a "second bite at the apple." Moreover, the arbitrator held the District's failure to reach a remedy was a

grievance in its own right.[1]  He then issued the following award on August 25, 1976:

> Elementary school teachers who were required to remain until 3 p. m. on June 27, 1975 shall be compensated for 5½ hours at their hourly rate in effect on that date.  Secondary school teachers required to be on duty until 3 p. m. on June 27, 1975 shall be compensated for 4 hours at their hourly rate in effect on that date.

The District appealed this award to the Court of Common Pleas of Lackawanna County.[2]  That court reversed and vacated the award, holding that it constituted additional compensation in violation of section 1006 of the PERA, 43 P.S. § 1101.1006, which provides "[n]o public employe shall be entitled to pay or compensation from the public employer for the period engaged in any strike."

The Federation appealed that decision to the Commonwealth Court which, on July 20, 1979, affirmed on other

1.  The definition of a grievance in the collective bargaining agreement, Article 13, section 1, includes a "complaint involving the work situation."  Arbitrator Loewenberg held that the "matter of a remedy for violation of such a condition can surely be deemed a complaint and hence the subject of a grievance."

2.  Since the judges of that court had sat as arbitrators during the collective bargaining impasse, and had drafted the language of the "make-up-time" provision, they recused themselves.  A specially presiding court en banc was then appointed by the Court Administrator's office; appointed were Judges Roy A. Gardner, Donald O'Malley and James Rutherford, President Judges of the 44th, 34th and 22nd Judicial Districts, respectively.

The District, in its brief, makes much ado about the memorandum opinion in which the Lackawanna County judges recused themselves, as that opinion states that the arbitrators misinterpreted the meaning of its "make-up-time" provision because it was not intended to violate section 1006 of the PERA, 43 P.S. § 1101.1006 (prohibiting pay or compensation for any period engaged in strike).  This memorandum opinion is of no moment to the instant case for several reasons: first, the instructions regarding intent are pure dictum as the judges had recused themselves; second, the opinion is wrong, as we shall see, in construing the award of the arbitrators as violating section 1006; and third, arbitrator Handsaker's finding of a violation of Article 3 of the contract in no way depends upon the judges' "make-up-time" provision which was completely silent as to closing procedures and merely extended the final day of school from one date to a latter.

grounds. 44 Pa.Cmwlth. 363, 403 A.2d 1355 (1979). A three-judge panel[3] of that court held simply that it could not sanction the bifurcated arbitration procedure which produced the disputed remedy. The panel held that "the Federation cannot be permitted to prosecute a grievance piecemeal . . . ." *Id.*, 44 Pa.Cmwlth. 366, 403 A.2d at 1357. Given this determination, the Commonwealth Court did not reach the issue of the legality of the award under section 1006 of the PERA.

We granted the Federation's petition for allowance of appeal. This case is, as appellant puts it, a "remarkable piece of litigation." It is remarkable because of the extent to which both the Court of Common Pleas and the Commonwealth Court have exceeded the permissible bounds of judicial review of an arbitrator's award in derogation of the PERA, the Arbitration Act of 1927, 5 P.S. §§ 161–181,[4] and the so-called "essence of the collective bargaining agreement" test which has been frequently enunciated by this Court. *See Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977). Because of this judicial interference, which has totally frustrated the policy of finality of arbitration embodied in both the PERA and the Arbitration Act, we reverse and reinstate the award of the arbitrator.

■ In labor disputes resolved by arbitration machinery, the less judicial participation the better. *Community College of Beaver County v. Society of the Faculty, supra*, 473 Pa. at 586 n.6, 375 A.2d at 1272 n.6. Accordingly, the oft-repeated "essence" test was adopted by this Court in 1977, *id.* 473 Pa. at 593–94, 375 A.2d at 1275:

To state the matter more precisely, where a task of an arbitrator, PERA or otherwise, has been to determine the

3. The panel consisted of Judges Genevieve Blatt, Richard DiSalle, and John A. MacPhail.

4. This Act was repealed and replaced by the "Uniform Arbitration Act", 42 Pa.C.S.A. §§ 7301–7320 which retains substantially the same provisions governing judicial review of arbitration awards. *Compare* 5 P.S. §§ 169–71 *with* 42 Pa.C.S.A. §§ 7302(b)–(d), 7313–15.

intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention ..." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969). It was this approach which was meant to be suggested by the brief statement in *International Brotherhood of Firemen and Oilers [v. School District of Philadelphia]*, quoted *supra*, that "the arbitrator's interpretation must be upheld if it is a reasonable one." 465 Pa. [356] at 366, 350 A.2d [804] at 809.[5]

The parties to this collective bargaining agreement had bargained for the arbitrator's construction, not the court's; thus a court has no business intruding into the domain of the arbitrator because its interpretation of the agreement differs from his. *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). It is clear that the broad judicial deference given arbitrators' decisions applies with equal force to determinations regarding the arbitrability of the subject matter of a grievance. In *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 31–32, 381 A.2d 849, 851 (1977), we noted:

Pennsylvania labor policy not only favors but requires the submission to arbitration of public employee grievances

**5.** The *Community College* case made it clear that the standard of review under the Arbitration Act of 1927 and the standard of review derived from federal decisional law, namely the Steelworker's Trilogy (*United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)) are substantially the same standard; moreover, this standard of judicial review is completely compatible with the policy and scheme of the PERA. *Community College of Beaver County v. Society of the Faculty, supra*, 473 Pa. at 587, 375 A.2d at 1271.

"arising out of the interpretation of the provisions of a collective bargaining agreement". See also *Lincoln System of Education v. Lincoln Association of University Professors,* 467 Pa. 112, 354 A.2d 576 (1976). From this policy is derived the corollary principle that where, as here, an arbitrator has interpreted a collective bargaining agreement in favor of the arbitrability of the grievance before him, a reviewing court should be slow indeed to disagree. As the Supreme Court of the United States observed in *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960):

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."

*See Ringgold Area School District v. Ringgold Education Association, PSEA/NEA,* 498 Pa. 380, 414 A.2d 118 (1980) (quoting *Allegheny County Prison Employees, supra,*) and *Port Authority of Allegheny County v. Amalgamated Transit Union, Division 85,* 492 Pa. 494, 424 A.2d 1299 (1981).

Given the restrictive scope of judicial review, it is difficult to understand the Commonwealth Court's decision in this case predicated solely on its notion that the parties to and arbitrator of a labor dispute cannot bifurcate a grievance proceeding. There is *nothing* in the collective bargaining agreement, the PERA, the Arbitration Act of 1927, or decisional law that prohibits the procedure followed by the arbitrators in this case.

■ We do not approve of bifurcated proceedings as a general practice in settling disputes arising under collective bargaining agreements. The policy of the statute is better served if a single arbitrator is permitted to dispose of all disputed matters arising under a collective bargaining agreement, including the question of remedies for violations of the agreement, in a single arbitration proceeding. (*See* 43 P.S. § 1101.903, "The procedure to be adopted is a proper

subject of bargaining with the proviso that the final step shall provide for a *binding decision* ....."). Neither this Court's nor the Commonwealth Court's disapproval generally with bifurcated arbitration proceedings is, however, sufficient justification for overriding the arbitrator's decision, especially since it would be unfair to permit the School District to take advantage of the limitation on the scope of the submission agreement which it had negotiated with the Federation.

The Commonwealth Court decision negates, without rationale, the presumption of arbitrability of a labor grievance, *Ringgold Area School District v. Ringgold Education Association, PSEA/NEA, supra,* 498 Pa. at 384, 414 A.2d at 120, and ignores this Court's instructions that an arbitrator's determination as to procedural matters is to be given *at least* as much freedom from judicial interference as decisions on substantive matters. *School District of Duquesne v. Duquesne Education Association,* 475 Pa. 279, 380 A.2d 353 (1977) (procedural questions which grow out of dispute should be left to the arbitrator).

Accordingly, as neither case law nor statutory law prohibit bifurcated proceedings, and as the ruling of arbitrator Loewenberg derived its essence from the collective bargaining agreement, the Commonwealth Court erred in holding otherwise.

■ Appellee raises several other overlapping reasons for affirming the Commonwealth Court. These "several" reasons are couched in different legal terms but all raise basically the same contention.[6] That contention is that if the Federation was aggrieved by the first arbitrator's deci-

---

6. Appellee makes many issues out of one, arguing that the second arbitrator had no "jurisdiction" to hear the grievance because the matter of the remedy was final, that the Federation had no "standing" to file the second grievance as the matter of the remedy was final, and that res judicata precluded the second arbitrator from awarding a remedy as the matter was final. The latter issue, though without merit, is the proper way to frame the argument; appellee's ability to invent various (incorrect) labels for one issue is interesting, but the quality of this argument is not enhanced by the quantity of issues in which it is raised.

sion that he (the arbitrator) could not fashion a remedy, then by failing to appeal *that* determination as an aggrieved party, the Federation is precluded from later seeking relief. Of course, this contention is bottomed on the assumption that appellant was required to seek the remedy at the same proceeding that determined the District's violation of the collective bargaining agreement. We have dispelled this assumption with our holding that there is no impediment to the bifurcated procedure adopted herein; accordingly, these related arguments of appellee must fail.

▇ Finally, appellee asserts, as did the Court of Common Pleas, that the arbitrator's award violated section 1006 of the PERA, 43 P.S. § 1101.1006, because it was tantamount to compensation for the period engaged in a strike. This contention is without merit—not only was the period at issue the final few days of the school year, months after the strike, *see Carmichaels Area School District v. Carmichaels Area Education Association,* 37 Pa.Cmwlth. 141, 389 A.2d 1203 (1978), *aff'd. per curiam,* 487 Pa. 15, 407 A.2d 382 (1979), but also the award was not compensation for work at all; it was, rather, a damage award for the District's violation of Article 3 of the collective bargaining agreement. Therefore, the award was not "against the law" as that phrase has been interpreted under section 11(d) of the Arbitration Act of 1927.[7] *Community College of Beaver County v. Society of Faculty, supra* 473 Pa. at 589–93, 375 A.2d at 1273–75.

For the foregoing reasons, the order of the Commonwealth Court is vacated and the award of Arbitrator Loewenberg is reinstated.

7. Section 11 of the Arbitration Act of 1927, 5 P.S. § 171, provided:
   In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:
   . . . .
   (d) Where the award is against the law, and is such that had it been the verdict of the jury the court would have entered different or other judgment notwithstanding the verdict."
   This provision was reenacted in substantially the same language in 42 Pa.C.S.A. § 7302(d).

NIX and McDERMOTT, JJ., filed concurring opinions.

ROBERTS, J., filed a dissenting opinion.

NIX, Justice, concurring.

Although I concur in the result reached by the majority, it is inappropriate and contrary to existing precedent to address the merits of the issue of whether the arbitrator's award violated section 1006 of PERA, 43 P.S. § 1101.1006. Once it is determined that a particular matter is within the essence of the bargaining agreement, our inquiry ceases. *Leechburg Area School Dist. v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981):

> The fact that [an] arbitrator in analyzing [a] dispute may have failed to properly perceive the question presented or erroneously resolved it, does not provide justification for judicial interference. Our inquiry ends once it is determined that the issue properly defined is within the terms of the agreement.

*Id.*, 492 Pa. at 521, 424 A.2d at 1313.

Absent a showing of fraud *in the decision making process*, the arbitrator's award should not be disturbed. *Assoc. of Pa. State Colleges and Univ. Faculties v. Commonwealth*, 496 Pa. 239, 436 A.2d 987 (1981) (Nix, J. concurring). "Any attempt to interpret the 'essence test' as a device to expand judicial review in this area . . . undermines the underlying purposes sought to be obtained through arbitration." *Id.*

McDERMOTT, Justice, concurring.

I concur in the majority opinion.

I think we are rather breathing too heavy to lift a feather. This case should be confined to its own procedural anomaly.

A controversy arose, it was submitted to arbitration. The arbitrator gave judgment, but misapprehending his function, refused to fashion a remedy. To do one and not the other, creates a vacuum soon filled with original acrimonies. An arbitrator, invested with the authorities delineated in the majority opinion, is to judge and resolve the controversy. To leave the parties to fashion their own remedy is to

abdicate the function. In this case, the arbitrator gave judgment and suggested the parties negotiate a remedy. They soon floundered. The party with the judgment but no remedy, requested arbitration to enforce the judgment of the first arbitrator. A new arbitrator was appointed and gave a remedy. This is obviously the simple solution. We are entwined in questions as to whether the parties should have appealed or whether an arbitrator or the parties may "bifurcate" issues. Neither question seems relevant. Although the majority opinion permits the bifurcation of issues under the narrow factual situation presented by this case, it cannot be read generally as warrant for the bifurcation of issues, involving separate hearings or each issue isolated. If such splitting of the issues was generally allowed, the arbitration process would lose the name of action. The majority opinion recognizes the large ambit of authority in an arbitrator, authority sufficient to resolve all issues under a single submission. To suggest or encourage the proliferation of hearings or appeals, is to defeat the swift, inexpensive solution of controversy, which is the purpose of arbitration.

ROBERTS, Justice, dissenting.

I dissent. The issue presented is not whether a bifurcated arbitration of a single grievance is permissible but rather whether appellants should have been permitted a second, separate arbitration of a second, separate "grievance" arising not from "the work situation" but from appellants' dissatisfaction with the original arbitrator's decision. As the second arbitrator lacked jurisdiction to consider appellants' new claim, the order of the Commonwealth Court should be affirmed.

Section 903 of the Public Employee Relations Act provides:

"Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that *the final step shall provide for a binding decision by an*

*arbitrator* or a tri-partite board of arbitrators as the parties may agree...."

43 P.S. § 1101.903 (1970) (emphasis added). Here, appellants took their grievance to an arbitrator who, on January 16, 1976, rendered a binding decision in accordance with the statute. The arbitrator's decision was that the school board's unilateral rescheduling of the final days of the strike-shortened school year as full days of student instruction constituted a violation of the collective bargaining agreement. The arbitrator further decided that the description of the grievance stipulated to by the parties did not empower him to grant appellants a remedy for this violation.

Rather than appeal the arbitrator's decision as to the scope of his powers to the court of common pleas, appellants followed the arbitrator's gratuitous suggestion and attempted to negotiate a remedy with appellee school district. By February 10, 1976, well within the thirty-day period permitted for an appeal from an arbitrator's decision, appellees were aware that the school district "considered the matter closed" and that further negotiation would be fruitless. However, instead of filing an appeal, appellees filed a new "grievance" with a second arbitrator, seeking the remedy which the first arbitrator had found himself powerless to award.

Contrary to the second arbitrator's erroneous finding, this second "grievance" was not properly arbitrable. The collective bargaining agreement between the parties, in relevant part, defined arbitrable issues as "complaint[s] involving the work situation." The issue before the second arbitrator was not a "complaint involving the work situation": that complaint had already been the subject of a binding decision by the first arbitrator. Rather, this second "grievance" was nothing more than a complaint involving the first arbitrator's decision as to the scope of his authority. The threshold issue was not whether a remedy should have been granted, but whether the first arbitrator misperceived the scope of his powers. Manifestly, such an issue relates only to the arbitration procedure itself and is not a proper issue for a

second arbitration. As a "party aggrieved" by the limited decision of the first arbitrator, appellants should have appealed that decision to the court of common pleas pursuant to Pa.R.Civ.P. 247 [rescinded May 24, 1979; now 42 Pa.C.S. § 933(b)], see *Pennsylvania Labor Relations Bd. v. Commonwealth*, 478 Pa. 582, 589–90, 387 A.2d 475, 478–79 (1978), rather than prolonging resolution of the controversy through a second, improper arbitration hearing.

In another case involving the same parties, the same school year, and the same issue of successive, separate arbitrations, the Commonwealth Court vacated the second arbitrator's award of back pay, stating:

"In local public employment disputes, the courts of common pleas have exclusive jurisdiction to review an arbitrator's award. Pa.R.C.P. No. 247. The Federation failed to follow the appropriate appellate procedure when the first arbitration did not award backpay, *i.e.* appeal."

*Scranton School District v. Scranton Federation of Teachers*, 43 Pa.Cmwlth. 102, 106, 402 A.2d 1091, 1093 (1979) (allocatur denied). So too here, where appellants chose to invent a second "grievance" and seek a second arbitration rather than follow the appropriate appellate procedure, the Commonwealth Court properly vacated the second arbitrator's award. Its order should be affirmed.