533 A.2d 1100

Abington School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 10, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, DOYLE, BARRY and COLINS.

*Karl A. Fritton*, with him, *Joseph C. Rudolf, Sprecher, Felix, Visco, Hutchison & Young*, for petitioner.

No appearance for respondent.

*A. Martin Herring*, with him, *John J. Donahue, Herring & Donahue*, for intervenors, H. Russell Pittman and all others similarly situated.

*William Fearen,* with him, *Michael I. Levin* and *Steven A. Stine, Cleckner and Fearen,* for amicus curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE DOYLE, November 27, 1987:

The Abington School District (School District) petitions for review of an order of the Unemployment Compensation Board of Review (Board) reversing a referee's determination that H. Russell Pittman (Claimant)[1] was ineligible for benefits under Section 402(d) of the Unemployment Compensation Law (Law)[2] for the compensable weeks ending September 10, 1977 through September 24, 1977 due to his participation in a teachers' strike by members of the Abington Education Association (AEA), the intervenor here. The Board determined that the work stoppage was a lockout, not a strike, and also ruled that under Sections 4(u),[3] 401,[4] and 401(d)(1)[5] of the Law, Claimant was "unemployed" during the weeks at issue and therefore eligible for benefits. We affirm.

This case arises out of a September 1977 labor dispute between the School District and the AEA. In January 1977, the parties began negotiation of a collective bargaining agreement to succeed a pact set to expire on June 30, 1977. Despite a number of bargaining sessions, as of August 24, 1977, no new agreement had been reached, and school was scheduled to open on September 6, 1977.

---

[1] Claimant is a token claimant on behalf of the members of his collective bargaining unit, the Abington Education Association.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d).

[3] 43 P.S. §753(u).

[4] 43 P.S. §801.

[5] 43 P.S. §801(d)(1).

On August 24, the AEA offered to return to work without a contract on September 6, 1977. On August 30, the School District rejected the AEA's proposal, but offered to extend the expired contract until a new agreement could be reached. The union, however, refused to accept this offer because of the "no strike" clause contained in the old agreement.

As a consequence of the impasse, the School District by formal action delayed the opening of school to September 12 and later to September 19, adjusting the school calendar accordingly. On September 15, however, an interim agreement was reached providing teachers with a five percent wage increase and requiring the AEA to give forty-eight hours' notice of an intent to strike. On that same date, the School District revised the school calendar to provide that the first teacher day would be September 26.

Eventually, a new collective bargaining agreement was reached in January 1978. The agreement was made retroactive to the date of the expired contract, and the school calendar remained at 184 teaching days between September and June. The teachers were paid for all days worked during the 1977-78 school year.

After a protracted procedural process,[6] the Board awarded benefits to the Claimant for the three-week pe-

---

[6] The Office of Employment Security (OES) (then the Bureau of Employment Security) initially approved benefits under Section 402(d) on the basis that the delay in opening school was the result of a lockout. On appeal by the School District, a referee affirmed, but remanded for consideration of Claimant's eligibility under Sections 4(u), 401 and 401(d) of the Law. The Board then affirmed the referee's decision under Section 402(d). A petition for review to this Court was quashed as interlocutory, *Abington School District v. Unemployment Compensation Board of Review*, 72 Pa. Commonwealth Ct. 457, 456 A.2d 1152 (1983), and the matter returned to the OES, which found Claimant eligible under Sections 4(u), 401 and 401(d). A referee reversed the OES' determination, and the

riod during which the opening of school was delayed. The School District petitions this Court for review.[7]

The first issue before us is whether the three-week delay in opening school was the result of a strike or a lockout, since an employee who participates in a strike is not entitled to unemployment compensation benefits for the time spent on strike. Section 402(d) of the Law.[8] Whether a work stoppage is due to a strike or a lockout is a mixed question of fact and law reviewable on appeal. *Norwin School District v. Belan,* 510 Pa. 255, 507 A.2d 373 (1986).

In *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 163 A.2d 91 (1960), the Supreme Court set forth the test for determining whether a work stoppage is due to a strike or a lockout:

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms

---

Board reversed the referee. The School District then petitioned this Court for review.

[7] In petitions for review from orders of the Board, our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed, or findings of fact were not supported by substantial evidence. *Dantzer v. Unemployment Compensation Board of Review,* 105 Pa. Commonwealth Ct. 308, 524 A.2d 529 (1987).

[8] 43 P.S. §802(d). This provision states in pertinent part: An employe shall be ineligible for compensation for any week—

(d) · In which his unemployment is due to a stoppage of work, which exists because of labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: . . . .

and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply.

*Id.* at 444-45, 163 A.2d at 93-94. Essentially, the question is one of assigning responsibility for a work stoppage.

The School District first argues that the work stoppage was a strike and not a lockout because the AEA refused to agree to the School District's offer to extend the expired contract, including the "no-strike" clause found therein. The AEA agreed to return to work, but refused to give up its right to strike. A similar situation was presented in *Centennial School District v. Unemployment Compensation Board of Review,* 56 Pa. Commonwealth Ct. 86, 424 A.2d 569 (1981), wherein the union offered to return to work for one month under the terms of the expired collective bargaining agreement, but refused to guarantee that there would be no strike at the end of the month. In *Centennial,* we rejected the school district's contention that the union's refusal to guarantee not to strike at the end of the one-month return period rendered the offer "unreasonable" under *Vrotney.* Likewise, the AEA's refusal to give up its right to strike here did not constitute a refusal to return to work under the terms and conditions of the old contract and, therefore, the Board correctly determined that the work stoppage was due to a lockout, not a strike.

Moreover, we note that *Vrotney* only requires that employees be willing to return to work under the terms and conditions of the expired contract for a *reasonable time. Vrotney,* 400 Pa. at 444, 163 A.2d at 93 (emphasis

added). If the AEA had to offer to return to work and guarantee to the School District that it would not strike, then, in essence, the teachers would have had to agree to continue working indefinitely, no matter the length of time, or even if a new collective bargaining agreement was not reached. This clearly is not what *Vrotney* requires.

The School District also contends that the AEA failed to satisfy *Vrotney* because it at no point specified for exactly what length of time it would adhere to the terms and conditions of the old agreement. Thus, according to the School District, the AEA did not meet the requirement of *Vrotney* that there be an offer to continue working "for a reasonable time."

We must disagree, for in the context of a work stoppage involving teachers and a school district, it is well-established that an offer to work on a day-to-day basis amounts to a "reasonable time" under *Vrotney*. *Centennial; McKeesport Area School District v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 334, 397 A.2d 458 (1979). It is equally well-established that a party that has prevailed before the Board (in this instance, the AEA) is entitled to the benefit of any inferences that can be reasonably drawn from the evidence. *Jones v. Unemployment Compensation Board of Review*, 74 Pa. Commonwealth Ct. 572, 460 A.2d 412 (1983). We find that it is reasonable to infer from the AEA's willingness to return to work, although without giving up the right to strike, that the return to work at a minimum would be on a day-to-day basis. Accordingly, we reject the School District's contention that the three-week work stoppage in this case was due to a strike, and affirm the Board's determination that the School District engaged in a lockout.

The School District last argues that even if the work stoppage were due to a lockout, the teachers were not

"unemployed" within the meaning of Sections 4(u) and 401 of the Law so as to qualify for benefits. The School District bases its argument on the fact that the new collective bargaining agreement, eventually reached in January 1978, was made retroactive and the teachers ended up working a full 184 days for the 1977-78 school year and were paid their full contractual salaries.

In support of its argument, the School District cites a footnote in *McKeesport,* a case involving a lockout by a school district. Specifically, the School District quotes the following language:

> If Claimants had been paid, or if compensation were payable to them, with respect to the period of the work stoppage, they would not meet the definition of 'unemployed' in Section 4(u) of the Unemployment Compensation Law, 43 P.S. §753(u), and would be ineligible for that reason.

*McKeesport,* 40 Pa. Commonwealth Ct. at 345 n. 5, 397 A.2d at 464 n. 5. Apart from the fact that this language is *dictum,* the School District ignores what was stated further in the footnote:

> Neverthless [sic], we note that a recent decision of this Court would allow an arbitrator to award to claimants such as those involved in these cases their full annual salary, undiminished by deductions for the period of the work stoppages. Carmichaels Area School District v. Carmichaels Area Education Association, 37 Pa. Commonwealth Ct. 141, 389 A.2d 1203 (1978). The possibility therefore exists that these claimants may ultimately collect their full annual salary in addition to unemployment compensation. Legislative action would appear to be necessary to prevent such a double recovery.

*Id.* Moreover, in contrast to *Carmichaels Area School District v. Carmichaels Area Education Association,* 37

Pa. Commonwealth Ct. 141, 389 A.2d 1203 (1978), *aff'd per curiam*, 487 Pa. 15, 407 A.2d 382 (1979), where sixteen instructional days were lost and not made up, the members of the AEA in the present case worked 184 days after they returned to teach on September 26, 1977. *Carmichaels*, of course, was not a case involving unemployment compensation benefits, but a case where the teachers grieved the issue of the school district's pro-rata reduction of their annual salaries when only 164 days of instruction were scheduled. However, we believe that the logic behind what Judge BLATT said in *Carmichaels* has equal applicability here:

> We agree that public employes cannot be awarded pay for any period during which they engaged in a strike, but we do not believe that the arbitrator made such an award here. Rather, he made an award based on his interpretation that the parties had bargained for specified salaries for a school year to be scheduled by the District which would not exceed 182 days in length.
>
> . . . .
>
> Because the award here was not compensation for the days the Association was on strike, we do not believe that the award is illegal.

*Id.,* at 148-49, 389 A.2d at 1207.

Further, the factual matrix here is not like the "bonus" received by the claimant in *Jeter v. Unemployment Compensation Board of Review,* 78 Pa. Commonwealth Ct. 279, 467 A.2d 418 (1983). In that case, the claimant voluntarily continued working at a public-sector job after funding for the position ran out, with a promise from her supervisor that, when funding was restored, the claimant would receive a "bonus" equivalent to the salary she would have earned if she had been paid for the services she "volunteered." This Court held that the claimant was liable for non-fault overpayments for un-

employment compensation for benefits received during the time she "volunteered," because she was performing services upon the expectation of receiving future benefits and, therefore, could not be considered "unemployed" within the meaning of Section 4(u).

The teachers here, however, were not only *not* working during the claim weeks at issue, but had no reasonable expectation of being compensated for those weeks. Accordingly, *Jeter* is wholly inapposite.

Finally, we reiterate the fundamental axiom that eligibility for unemployment compensation benefits is determined on a week-to-week basis, and eligibility is determined solely by looking at the relevant claim weeks, not at future events such as the outcome of collective bargaining negotiations. *See Smith v. Unemployment Compensation Board of Review,* 92 Pa. Commonwealth Ct. 511, 500 A.2d 186 (1985). Therefore, we hold that when teachers are subjected to a lockout, but eventually reach a settlement with a school district made retroactive to the beginning of the lockout period, the teachers remain "unemployed" within the meaning of Sections 4(u) and 401 of the Law for the time of the lockout, and thus are eligible for benefits.

Affirmed.

ORDER

Now, November 27, 1987, the order of the Unemployment Compensation Board of Review, No. B-178582-B dated February 27, 1986, is affirmed.

---

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I disagree with the majority's application of the *Vrotney* test to the negotiations conducted in this matter.

The *Vrotney* test requires the union to offer to continue working for a reasonable period of time under the terms and conditions of the *expired* contract. Here, the record indicates that the expired contract has a no-strike provision and, because of that provision, the union refused to continue working under it. Instead, the union offered to work without any contract at all. This would, in effect, have eviscerated the old contract's no-strike provision by allowing the union to strike at any time.

The union could have offered to work under the terms of the expired contract with the no-strike clause for a certain period of time or, for example, with an agreement that it would give 48 hours notice of strike. Under such circumstances, the union's offer to work would be for a "reasonable time and under the pre-existing terms and condition," as *Vrotney* requires.

I would conclude that the three-week delay in the opening of school was due to a strike, not a lockout.